UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>PLAYTIKA, LTD an Israeli limited company, PLAYTIKA HOLDING CORP., a Delaware corporation, and CAESARS INTERACTIVE ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>*Defendants*. | Case No.<br><br>**COMPLAINT—CLASS ACTION**<br><br>**JURY DEMAND** |

Plaintiff Sean Wilson brings this case, individually and on behalf of all others similarly situated, against Defendant Playtika Ltd., Playtika Holding Corp. (collectively "Playtika"), and Caesars Interactive Entertainment, LLC ("CIE") (collectively "Defendants") to enjoin their operation of illegal online casino games. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and upon information and belief, including investigation conducted by his attorneys, as to all other matters.

## **NATURE OF THE ACTION**

1. Playtika owns and operates a leading video game development company in the so-

COMPLAINT—CLASS ACTION
Case No.

- 1 -

Tousley Brain Stephens, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

called "casual games" industry—that is, computer games designed to appeal to a mass audience of casual gamers. Playtika owns and operates a host of popular online slot machine games including, *inter alia,* Caesars Slots, Slotomania, House of Fun, and Vegas Downtown Slots.

2. Playtika provides visitors of its online slot machines a bundle of free "coins" that can be used to wager on its games. After consumers inevitably lose their initial allotment of coins, Playtika attempts to sell them additional coins starting at $2.99 for 20,000 coins. Without coins, consumers cannot play Defendant's online slot machines.

3. Freshly topped off with additional coins, consumers wager to win more coins. The coins won by consumers playing Playtika's games of chance are identical to the coins that it sells. Thus, by wagering 20,000 coins that were purchased for $2.99, consumers have the chance to win hundreds of thousands of additional coins that they would otherwise have to purchase.

4. By operating its online slot machines, Playtika has illegally profited from tens of thousands of consumers. Accordingly, Plaintiff Wilson, on behalf of himself and the Classes of similarly situated individuals, brings this lawsuit to recover their losses, as well as costs and attorneys' fees.

**PARTIES**

5. Plaintiff Sean Wilson is a natural person and a citizen of the state of Washington.

6. Defendant Playtika Ltd. is a limited company incorporated and existing under the laws of Israel, with its principal place of business at 8 HaChoshlim Street, Herzliya 4672408, Israel. Playtika Ltd. conducts business throughout this District, Washington State, and the United States.

7. Defendant Playtika Holding Corp. is a corporation incorporated and existing under the laws of Delaware, with its principal place of business at 2225 Village Walk Drive #240, Henderson, Nevada 89052. Playtika Holding Corp. conducts business throughout this District, Washington State, and the United States.

8. Defendant Caesars Interactive Entertainment, LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at One

COMPLAINT—CLASS ACTION
Case No.

- 2 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

Caesars Palace Drive, Las Vegas, Nevada 89109. Caesars Interactive conducts business throughout this District, Washington State, and the United States.

**JURISDICTION AND VENUE**

9. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

10. The Court has personal jurisdiction over Defendants because they conduct business in this District, and because the wrongful conduct occurred in and emanated from this District.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

**I.     Free-to-Play and the New Era of Online Gambling**

12. The proliferation of internet-connected mobile devices has led to the growth of what are known in the industry as "free-to-play" videogames. The term is a misnomer. It refers to a model by which the initial download of the game is free, but companies reap huge profits by selling thousands of "in-app" items that start at $0.99 (purchases known as "micro-transactions" or "in-app purchases").

13. The in-app purchase model has become particularly attractive to developers of games of chance (*e.g.*, poker, blackjack, and slot machine mobile videogames, amongst others), because it allows them to generate huge profits. In 2017, free-to-play games of chance generated over $3.8 billion in worldwide revenue, and they are expected to grow by ten percent annually.[1] Even "large land-based casino operators are looking at this new space" for "a healthy growth

---

[1]     GGRAsia – Social casino games 2017 revenue to rise 7pct plus says report, http://www.ggrasia.com/social-casino-games-2017-revenue-to-rise-7pct-plus-says-report/ (last visited Apr. 6, 18)

COMPLAINT—CLASS ACTION
Case No.

- 3 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

potential."[2]

14. With games of chance that employ the in-game purchase strategy, developers have begun exploiting the same psychological triggers as casino operators. As one respected videogame publication put it:

> "If you hand someone a closed box full of promised goodies, many will happily pay you for the crowbar to crack it open. The tremendous power of small random packs of goodies has long been known to the creators of physical collectible card games and companies that made football stickers a decade ago. For some … the allure of a closed box full of goodies is too powerful to resist. Whatever the worth of the randomised [sic] prizes inside, the offer of a free chest and the option to buy a key will make a small fortune out of these personalities. For those that like to gamble, these crates often offer a small chance of an ultra-rare item."[3]

15. Another stated:

> "Games may influence 'feelings of pleasure and reward,' but this is an addiction to the games themselves; micro-transactions play to a different kind of addiction that has existed long before video games existed, more specifically, an addiction similar to that which you could develop in casinos and betting shops."[4]

16. The comparison to casinos doesn't end there. Just as with casino operators, mobile game developers rely on a small portion of their players to provide the majority of their profits. These "whales," as they're known in casino parlance, account for just "0.15% of players" but provide "over 50% of mobile game revenue."[5]

17. Game Informer, another respected videogame magazine, reported on the rise (and danger) of micro-transactions in mobile games and concluded:

> "[M]any new mobile and social titles target small, susceptible populations for large percentages of their revenue. If ninety-five people all play a [free-to-play] game without spending money, but five people each pour $100 or more in to obtain virtual currency, the designer can break even. These five individuals are what the industry calls whales, and we tend not to be too concerned with how they're being used in the equation. While the scale and potential financial ruin is

---

[2] *Report confirms that social casino games have hit the jackpot with $1.6B in revenue | GamesBeat*, https://venturebeat.com/2012/09/11/report-confirms-that-social-casino-games-have-hit-the-jackpot-with-1-6b-in-revenue/ (last visited Apr. 6, 18).
[3] PC Gamer, *Microtransactions: the good, the bad and the ugly*, http://www.pcgamer.com/microtransactions-the-good-the-bad-and-the-ugly/ (last visited Apr. 5, 2018).
[4] The Badger, *Are micro-transactions ruining video games? | The Badger*, http://thebadgeronline.com/2014/11/micro-transactions-ruining-video-games/ (last visited Apr. 5, 2018).
[5] *Id.* (emphasis added).

COMPLAINT—CLASS ACTION
Case No.
- 4 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

of a different magnitude, a similar profitability model governs casino gambling."[6]

18. Academics have also studied the socioeconomic effect games that rely on in-app purchases have on consumers. In one study, the authors compiled several sources analyzing so-called free-to-play games of chance (called "casino" games below) and stated that:

> "[Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (*e.g.*, employment, education, income) with online gamblers. Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games. Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences with gambling."

> …

> "According to [another study], the purchase of virtual credits or virtual items makes the activity of [free-to-play] casino gaming more similar to gambling. Thus, micro-transactions may be a crucial predictor in the migration to online gambling, as these players have now crossed a line by paying to engage in these activities. Although, [sic] only 1–5% of [free-to-play] casino gamers make micro-transactions, those who purchase virtual credits spend an average of $78. Despite the limited numbers of social casino gamers purchasing virtual credits, revenues from micro-transactions account for 60 % of all [free-to-play] casino gaming revenue. Thus, a significant amount of revenue is based on players' desire to purchase virtual credits above and beyond what is provided to the player in seed credits."[7]

19. The same authors looked at the link between playing free-to-play games of chance and gambling in casinos. They stated that "prior research indicated that winning large sums of virtual credits on social casino gaming sites was a key reason for [consumers'] migration to online gambling," yet the largest predictor that a consumer will transition to online gambling was "micro-transaction engagement." In fact, "the odds of migration to online gambling were approximately *eight times greater* among people who made micro-transactions on [free-to-play] casino games compared to [free-to-play] casino gamers who did not make micro-transactions."[8]

---

[6] Game Informer, *How Microtransactions Are Bad For Gaming - Features - www.GameInformer.com*, http://www.gameinformer.com/b/features/archive/2012/09/12/how-microtransactions-are-bad-for-gaming.aspx?CommentPosted=true&PageIndex=3 (last visited Apr. 5, 2018)

[7] Hyoun S. Kim, Michael J. A. Wohl, *et al.*, *Do Social Casino Gamers Migrate to Online Gambling? An Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014), *available at* http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf (citations omitted).

[8] *Id.* (emphasis added).

COMPLAINT—CLASS ACTION
Case No.
- 5 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

20. The similarity between micro-transaction based games of chance and games of chance found in casinos has caused governments across the world to intervene to limit their availability.[9] Unfortunately, such games have eluded regulation in the United States. As a result, and as described below, Defendants' online slot machine games have thrived and thousands of consumers have spent millions of dollars unwittingly playing Defendants' unlawful games of chance.

II. **A Brief Introduction to Playtika**

21. In December 2010, Playtika launched an online casino game called Slotomania. Over the years, Playtika expanded its online casino game offering and developed a host of online slot machine games including, *inter alia*, House of Fun, Caesars Slots, and Vegas Downtown Slots.

22. Playtika has been through a series of mergers and acquisitions by some the largest social gaming companies and casinos. In 2011, Caesars Interactive Entertainment—one of the largest online, mobile, and social gaming companies with long ties to traditional casino gaming—purchased Playtika. Later in 2016, Giant Interactive Group acquired Playtika and its entire offering of casino games for $4.4 billion.[10]

23. Consumers can play Playtika's online slot machines through numerous websites like Facebook and on mobile devices such as Android phones and Apple iPhones.

24. Defendants have made large profits through their online gambling games. In 2014 alone, Playtika generated almost $280 million in revenue.[11] The revenue Defendants receive

---

[9] In late August 2014, South Korea began regulating "social gambling" games, including games similar to Defendant's, by "ban[ning] all financial transactions directed" to the games. PokerNews.com, *Korea Shuts Down All Facebook Games In Attempt To Regulate Social Gambling | PokerNews*, https://www.pokernews.com/news/2014/09/korea-shuts-down-facebook-games-19204.htm (last visited Apr. 5, 2018). Similarly, "the Maltese Lotteries and Gambling Authority (LGA) invited the national Parliament to regulate all digital games with prizes by the end of 2014." *Id.*

[10] *China's Giant leads consortium to buy Playtika for $4.4 billion*, Game Beat, https://venturebeat.com/2016/07/30/chinas-giant-leads-consortium-to-buy-playtika-for-4-4-billion/ (last visited Apr. 6, 18).

[11] Caesars Acquisition Company, Form 10-K, at 27, 53, http://files.shareholder.com/downloads/AMDA-26XRVU/108250871x0x816171/7DEB3AB6-

COMPLAINT—CLASS ACTION
Case No.

- 6 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

from Playtika's online casino games are the result of operating unlawful games of chance camouflaged as innocuous videogames.

**III.   Defendants' Online Casino Contains Unlawful Games of Chance**

25.    As explained above, Playtika owns and operates a host of online slot machine games. Each game functions in a substantially similar fashion. That is, consumers purchase and wage real money on games of chance.

26.    Consumers visiting Playtika's online casino for the first time are awarded a bundle of coins. For example, Playtika gives away 20,000 "coins" to new Slotomania players. These free sample coins offer a taste of gambling and are designed to encourage players to get hooked and buy more coins for real money.

27.    After they begin playing, consumers quickly lose their initial allotment coins. Immediately thereafter, Playtika informs them via a "pop up" screen that they have insufficient coins to place a wager. *See e.g.,* Figures 1 and 2. Once players run out of their allotment of free coins, they cannot continue to play the game without buying more coins for real money.



(**Figure 1**, showing Defendants' Slotomania game on Facebook.)

---

64B5-46D9-80CC-FAE83E09DC48/CACQ-2014_Q4_Form_10-K.PDF (last visited Apr. 5, 2018).

COMPLAINT—CLASS ACTION
Case No.                                              - 7 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992



(**Figure 2**, showing Defendants' House of Fun game on iOS.)

28.    Concurrently with that warning, Playtika provides a link to consumers, allowing them to purchase coins with real money at its electronic store. Playtika's Slotomania online casino, for example, sells coins from $2 for 7,500 coins to $50 for 320,000 coins. *See* Figure 3.



(**Figure 3,** showing Defendants' Slotomania coin prices)

29.    Similarly, Playtika sells coins from $2 for 131,250 coins to $50 for 4,375,000 coins on its Facebook Caesar's Casino slot game. *See* Figure 4.

COMPLAINT—CLASS ACTION
Case No.

- 8 -

Tousley Brain Stephens, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

(**Figure 4,** showing Defendants' Caesars Casino slot game coin prices)

30. The decision to sell coins by the thousands isn't an accident. Rather, Playtika attempts to lower the perceived cost of the coins (costing just a fraction of a penny per coin) while simultaneously maximizing the value of the award (awarding millions of coins in jackpots), further inducing consumers to bet on its games.

31. To begin wagering, players select the "BET/LINE" (*i.e.*, bet per played line) that will be used for a spin, as illustrated in Figure 5, which illustrates Playtika's Caesar's Slots game. Playtika allows players to multiply their bet by changing the number of "lines" (*i.e.*, combinations) on which the consumer can win, shown in Figure 5 as the "LINE" button.



(**Figure 5,** showing Defendants' Caesars Slots game.)

32. The bet amount multiplied by the number of lines comprises the "Total Bet" shown in Figure 5. Thus, in the example shown in Figure 5, the player is attempting to bet 2,000 coins, or approximately $0.03, for one spin of the slot machine.

COMPLAINT—CLASS ACTION
Case No.

- 9 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

33. Once a consumer spins the slot machine by pressing the "SPIN" button, Playtika does not allow (or call for) any additional user action by the player on any of its slot machine games. Instead, the consumer's computer or mobile device communicates with and sends information (such as the "Total Bet" amount) to Playtika's servers. Playtika's servers then execute the game's algorithms that determine the spin's outcome. Notably, none of Defendants' games depend on any amount of skill to determine their outcomes—all outcomes are based entirely on chance.

34. Consumers can continue playing with the coins that they won, or they can exit the game and return at a later time to play because Playtika maintains win and loss records and account balances for each consumer. Indeed, once Playtika's algorithms determine the outcome of a spin and Playtika displays the outcome to the consumer, it adjusts the consumer's account balance. Playtika keeps records of each wager, outcome, win, and loss for every player.

## FACTS SPECIFIC TO PLAINTIFF WILSON

35. Since at least 2012, Plaintiff Wilson has been playing Playtika's online slot machines. Specifically, Wilson has played "House of Fun" and "Slotomania Slots" on his iOS devices, and "Slotomania" and "Caesars Slots" on Facebook.

36. After Plaintiff lost the balance of his initial allocation of free coins, he began purchasing coins from Defendants for use in its online slot machine games.

37. Thereafter, Plaintiff Wilson continued playing Playtika's slot machines where he would wager coins for the chance of winning additional coins. Starting in September 2016, Plaintiff Wilson wagered and lost (and Defendants therefore won) over $10 at Defendants' games of chance.

## CLASS ALLEGATIONS

38. **Class Definition**: Plaintiff Wilson brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and the Class and Subclass (collectively the "Classes") of similarly situated individuals, defined as follows:

COMPLAINT—CLASS ACTION
Case No.
- 10 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

> **Class:** All persons in the State of Washington who purchased and lost coins playing Defendants' slot machine games.
>
> **CIE Subclass** All persons in the State of Washington who purchased and lost coins playing Defendants' slot machine games before October 22, 2016.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39. **Numerosity**: On information and belief, tens of thousands of consumers fall into the definition of the Classes. Members of the Classes can be identified through Defendants' records, discovery, and other third-party sources.

40. **Commonality and Predominance**: There are many questions of law and fact common to Plaintiff's and the Classes' claims, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   a. Whether Defendants' online casino games are "gambling" as defined by RCW § 9.46.0237;

   b. Whether Defendants are the proprietor for whose benefit the online casino games are played;

   c. Whether Plaintiff and each member of the Class lost money or anything of value by gambling;

   d. Whether Defendants violated the Washington Consumer Protection Act, RCW § 19.86.010, *et seq.*; and

   e. Whether Defendants has been unjustly enriched as a result of its conduct.

COMPLAINT—CLASS ACTION
Case No.
- 11 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

41. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff's and the members of the Classes sustained damages arising out of Defendants' wrongful conduct.

42. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Classes, as Plaintiff and each member of the Classes lost money playing Defendants' games of chance. Plaintiff also has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

43. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies that Plaintiff challenges apply and affect members of the Classes uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Classes are the same.

44. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Classes is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendants' wrongful conduct. Absent a class action, it would be difficult, if not impossible, for the individual members of the Classes to obtain effective relief from Defendants. Even if members of the Classes themselves could sustain such individual litigation, it would not

COMPLAINT—CLASS ACTION
Case No.
- 12 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  be preferable to a class action because individual litigation would increase the delay and expense
2  to all parties and the Court and require duplicative consideration of the legal and factual issues
3  presented. By contrast, a class action presents far fewer management difficulties and provides the
4  benefits of single adjudication, economy of scale, and comprehensive supervision by a single
5  Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will
6  be ensured.

7  45.  Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class
8  Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of Revised Code of Washington § 4.24.070**
**(On behalf of Plaintiff and the Classes)**

46.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47.  Plaintiff, members of the Classes, and Defendants are all "persons" as defined by RCW § 9.46.0289.

48.  The state of Washington's "Recovery of money lost at gambling" statute, RCW 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

49.  "Gambling," defined by RCW § 9.46.0237, "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence."

50.  Defendants' "coins" sold for use in Defendants' online casino "thing[s] of value" under RCW § 9.46.0285.

51.  Defendant's online casino games are illegal gambling games because they are online games at which players wager things of value (the coins) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins).

COMPLAINT—CLASS ACTION
Case No.
- 13 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

52. Defendants are the proprietors for whose benefit the online gambling games are played because they own (or owned) the Playtika online casino games and operate those games for their own profit. Specifically, CIE was the proprietor who received the benefit from the Classes when it owned and operated Playtika between 2011 and October 2016.

53. As such, Plaintiff and the Classes gambled when they purchased coins to wager at Playtika's online gambling games. Plaintiff and each member of the Classes staked money, in the form of coins purchased with money, at Playtika's games of chance (*e.g.*, Playtika's online slot machines) for the chance of winning additional things of value (*e.g.*, coins that extend gameplay without additional charge).

54. In addition, Playtika's online slot machines are not "pinball machine[s] or similar mechanical amusement device[s]" as contemplated by the statute because:

   a. the games are electronic rather than mechanical;

   b. the games confer replays but they are recorded and can be redeemed on separate occasions (*i.e.*, they are not "immediate and unrecorded"); and

   c. the games contain electronic mechanisms that vary the chance of winning free games or the number of free games which may be won (*e.g.*, the games allow for different wager amounts and some allow for the player to win on multiple "lines").

55. RCW § 9.46.0285 states that a "'Thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

56. The "coins" Plaintiff and the Classes had the chance of winning in Playtika's games are "thing[s] of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

COMPLAINT—CLASS ACTION
Case No.
- 14 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

57. Playtika's games are "Contest[s] of chance," as defined by § RCW 9.46.0225, because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." Playtika's games are programmed to have outcomes that are determined entirely upon chance and a contestant's skill does not affect the outcomes.

58. RCW § 9.46.0201 defines "Amusement game[s]" as games where "The outcome depends in a material degree upon the skill of the contestant," amongst other requirements. Playtika's games are not "Amusement game[s]" because their outcomes are dependent entirely upon chance and not upon the skill of the player and because the games are "contest[s] of chance," as defined by RCW § 9.46.0225.

59. As a direct and proximate result of Defendants' gambling games, Plaintiff Wilson and each member of the Classes have lost money wagering at Defendants' games of chance. Plaintiff Wilson, on behalf of himself and the Classes, seeks an order (1) requiring Defendants to cease the operation of the gambling games; and/or (2) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

**SECOND CAUSE OF ACTION**
**Violations of the Washington Consumer Protection Act, § RCW 19.86.010, *et seq.***
**(On behalf of Plaintiff and the Classes)**

60. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61. Washington's Consumer Protection Act, RCW § 19.86.010 *et seq.* ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

62. To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." RCW § 19.86.020.

COMPLAINT—CLASS ACTION
Case No.
- 15 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

63. The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it . . . Violates a statute that contains a specific legislative declaration of public interest impact."

64. Defendants violated RCW § 9.46.010, *et seq.* which declares that:

> "The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.
>
> It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace."

65. Defendants have violated RCW § 9.46.010, *et seq.*, because its online casino games are illegal online gambling games as described in ¶¶ 46 to 59 *supra*.

66. Defendants' wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendants were engaged in the operation of making computer games available to the public.

67. Defendants' acts and practices were and are injurious to the public interest because Defendants, in the course of its business, continuously advertised to and solicited the general public in Washington State and throughout the United States to play its unlawful games of chance. This was part of a pattern or generalized course of conduct on the part of Defendants, and many consumers have been adversely affected by Defendants' conduct and the public is at risk.

68. Defendants have profited immensely from their operation of unlawful games of chance, amassing hundreds of millions of dollars from the losers of their games of chance.

COMPLAINT—CLASS ACTION
Case No.
- 16 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

69. As a result of Defendants' conduct, Plaintiff and the Class members were injured in their business or property—*i.e.*, economic injury—in that they lost money wagering on Defendants' unlawful games of chance.

70. Defendants' unfair or deceptive conduct proximately caused Plaintiff's and the members of the Classes' injury because, but for the challenged conduct, Plaintiff and the members of the Classes would not have lost money wagering at or on Defendants' games of chance, and they did so as a direct, foreseeable, and planned consequence of that conduct.

71. Plaintiff, on his own behalf and on behalf of the Classes, seeks to enjoin further violation and recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Classes)**

72. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73. Plaintiff and the Classes have conferred a benefit upon Defendant in the form of the money Defendants received from them for the purchase of coins to wager at their online casino games.

74. Defendants appreciate and/or have knowledge of the benefits conferred upon them by Plaintiff and the Classes.

75. Under principles of equity and good conscience, Defendants should not be permitted to retain the money obtained from Plaintiff and the members of the Classes, which Defendants have unjustly obtained as a result of its unlawful operation of slot machines and/or gambling devices. As it stands, Defendants have retained millions of dollars in profits generated from their unlawful games of chance and should not be permitted to retain those ill-gotten profits.

COMPLAINT—CLASS ACTION
Case No.
- 17 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

76. Accordingly, Plaintiff and the Classes seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herein.

**PRAYER FOR RELIEF**

Plaintiff Sean Wilson, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

a) Certifying this case as a class action on behalf of the Classes defined above, appointing Sean Wilson as representative of the Classes, and appointing his counsel as class counsel;

b) Declaring that Defendants' conduct, as set out above, violates the CPA;

c) Entering judgment against Defendants, in the amount of the losses suffered by Plaintiff and each member of the Classes;

d) Enjoining Defendants from continuing the challenged conduct;

e) Awarding damages to Plaintiff and the members of the Classes in an amount to be determined at trial, including trebling as appropriate;

f) Awarding restitution to Plaintiff and members of the Classes in an amount to be determined at trial, and requiring disgorgement of all benefits that Defendants unjustly received;

g) Awarding reasonable attorney's fees and expenses;

h) Awarding pre- and post-judgment interest, to the extent allowable;

i) Entering judgment for injunctive and/or declaratory relief as necessary to protect the interests of Plaintiff and the Classes; and

j) Awarding such other and further relief as equity and justice require.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

COMPLAINT—CLASS ACTION
Case No.
- 18 -

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

| | |
|---|---|
| Dated: April 6, 2018 | Respectfully Submitted,<br><br>By:  /s/Janissa A. Strabuk<br>      /s/Cecily C. Shiel<br><br>TOUSLEY BRAIN STEPHENS, PLLC<br>Janissa A. Strabuk<br>jstrabuk@tousley.com<br>Cecily C. Shiel<br>cshiel@tousley.com<br>1700 Seventh Avenue, Suite 2200<br>Seattle, Washington 98101-4416<br>Tel: 206.682.5600<br>Fax: 206.682.2992<br><br>EDELSON PC<br>Benjamin H. Richman*<br>brichman@edelson.com<br>350 North LaSalle Street, Suite 1400<br>Chicago, Illinois 60654<br>Tel: 312.589.6370<br>Fax: 312.589.6378<br><br>Rafey Balabanian*<br>rbalabanian@edelson.com<br>123 Townsend Street, Suite 100<br>San Francisco, California 94107<br>Tel: 415.212.9300<br>Fax: 415.373.9435<br><br>*Pro hac vice admission to be sought.<br><br>*Attorneys for Plaintiff and the Putative Class* |

COMPLAINT—CLASS ACTION
Case No.
- 19 -
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992