**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated, | No. 3:18-cv-05275-RBL |
| *Plaintiff,* | |
| v. | |
| PTT, LLC., a Delaware limited liability company, d/b/a HIGH 5 GAMES, LLC, a Delaware limited liability company. | |
| *Defendant.* | |
| SEAN WILSON, individually and on behalf of all others similarly situated, | No. 3:18-cv-05277-RBL |
| *Plaintiff,* | |
| v. | |
| PLAYTIKA, LTD., an Israeli limited company, PLAYTIKA HOLDING CORP., a Delaware corporation, and CAESARS INTERACTIVE ENTERTAINMENT, LLC, a Delaware limited liability company, | |
| *Defendants.* | |
| SHERYL FIFE, individually and on behalf of all others similarly situated, | No. 2:18-cv-00565-RBL |
| *Plaintiff,* | **PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| SCIENTIFIC GAMES CORP., a Nevada corporation, | **ORAL ARGUMENT REQUESTED** |
| *Defendant.* | |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

BACKGROUND ...................................................................................... 1

I.   Defendants' Casino Games ................................................................. 1

II.   Washington's Gambling Loss Recovery Act .................................... 3

LEGAL STANDARD .............................................................................. 3

ARGUMENT ........................................................................................... 4

I.   The Ninth Circuit's Decision in *Kater* Is Largely Dispositive ...................... 4

   A.   In-Game Credits that Cost Money and Allow Free
        Play Are Things of Value ........................................................... 5

   B.   This Court Is Bound by the Ninth Circuit, Not a Pamphlet ............................. 9

   C.   Defendants Cannot Rely on Authority that the Ninth Circuit Rejected ........ 10

II.   Casino Games Do Not Trigger the Bona Fide Business Transaction Exception ....... 11

III.   The Court Cannot Consider Defendants' External Evidence that
       Purports to Contradict Plaintiffs' Complaints ............................................ 12

   A.   Declarations ................................................................................ 15

   B.   Scientific Games' Copy of Video Game, Video, and Screenshot .................... 16

   C.   Defendants' Purported Statements Regarding Operation of Games ............ 18

   D.   Sean Wilson's Player Records ................................................... 19

   E.   Court and Agency Documents .................................................. 20

   F.   Playtika's Motion to Strike ....................................................... 21

IV.   Defendants' Materials Contradict Their Claims That the Games Are Free ........... 22

V.   Plaintiffs' Consumer Protection Act Claims Are Viable ........................... 24

CONCLUSION ..................................................................................... 24

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**United States Appellate Court Cases**

4
5

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ............................................................. 15, 16, 17

6

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010).................................................................. 13, 14

7
8

*Friedman v. AARP, Inc.*,
    855 F.3d 1047 (9th Cir. 2017)........................................................................ 3

9
10

*Kater v. Churchill Downs Inc.*,
    886 F.3d 784 (9th Cir. 2018) .................................................................*passim*

11

*Khoja v. Orexigen Therapeutics, Inc.*,
    No. 16-56069, 2018 WL 3826298 (9th Cir. Aug. 13, 2018) ...................*passim*

12
13

*Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*,
    973 F.2d 688 (9th Cir. 1992) ......................................................................... 5

14
15

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)....................................................................... 17

16
17

*Knox v. Davis*,
    260 F.3d 1009 (9th Cir. 2001)....................................................................... 11

18

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)............................................................................ 7

19
20

*Mason v. Mach. Zone, Inc.*,
    851 F.3d 315 (4th Cir. 2017) ........................................................................ 10

21
22

*Owino v. Holder*,
    771 F.3d 527 (9th Cir. 2014) .......................................................................... 3

23
24

*Planned Parenthood of Idaho, Inc. v. Wasden*,
    376 F.3d 908 (9th Cir. 2004) ........................................................................ 11

25
26

*Reusser v. Wachovia Bank, N.A.*,
    525 F.3d 855 (9th Cir. 2008) ................................................................... 15, 19

27

*Rivera v. Philip Morris, Inc.*,
    395 F.3d 1142 (9th Cir. 2005)....................................................................... 14

*Solid 21, Inc. v. Breitling USA, Inc.*,
   512 F. App'x 685 (9th Cir. 2013) ................................................................. 13

*Turnacliff v. Westly*,
   546 F.3d 1113 (9th Cir. 2008) .............................................................. 15, 19

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .................................................................. 13

**United States District Court Cases**

*Bailey v. Morales*,
   190 F.3d 320 (5th Cir. 1999) ...................................................................22

*CertainTeed Corp. v. Seattle Roof Brokers*,
   No. C 09-563 RAJ, 2010 WL 2640083 (W.D. Wash. June 28, 2010) ............................18

*Diamond Foods, Inc. v. Hottrix, LLC*,
   No. 14-CV-03162-BLF, 2016 WL 3880797 (N.D. Cal. July 18, 2016) ........................17

*Fields v. Wise Media LLC*,
   No. 12-cv-05160, 2013 WL 12174296 (N.D. Cal. Jan. 25, 2013) ...................................16

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ..........................................................19

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   No. 01-CV-0649 K AJB, 2002 WL 34716875 (S.D. Cal. Oct. 4, 2002) .................. 14, 15

*Luken v. Christensen Grp. Inc.*,
   No. C16-5214-RBL, 2016 WL 5920092 (W.D. Wash. Oct. 11, 2016) ...........................21

*Phillips v. Double Down Interactive LLC*,
   173 F. Supp. 3d 731 (N.D. Ill. 2016) ...........................................................10

*Soto v. Sky Union, LLC*,
   159 F. Supp. 3d 871 (N.D. Ill. 2016) ...........................................................10

*Stitt v. San Francisco Mun. Transp. Agency*,
   No. 12-CV-03704 YGR, 2013 WL 121259 (N.D. Cal. Jan. 8, 2013) ...........................14

*Roshandel v. Chertoff*,
   No. C07-1739MJP, 2008 WL 1969646 (W.D. Wash. May 5, 2008) ..............................14

*Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.,*
    No. 17CV0087-GPC-MDD, 2017 WL 6371849 (S.D. Cal. Dec. 13, 2017) .....................5

**State Cases**

*Bullseye Distrib. LLC v. State Gambling Comm'n,*
    110 P.3d 1162 (Wash Ct. App. 2005) ........................................................................7, 8

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
    719 P.2d 531 (Wash. 1986) ......................................................................................24

*Heitfeld v. Benevolent & Protective Order of Keglers,,*
    220 P.2d 655 (Wash. 1950) .........................................................................................5

*Holland v. King Cty. Adult Det.,*
    No. C12-0791JLR, 2013 WL 1192763 (W.D. Wash. Mar. 22, 2013) ...........................15

*O'Neil v. Crampton,*
    140 P.2d 308 (Wash. 1943) .........................................................................................5

*State v. Joseph,*
    416 P.3d 738 (Wash. Ct. App. 2018) ...................................................................11, 12

*State v. Larson,*
    365 P.3d 740 (Wash. 2015) .................................................................................11, 12

*State v. Reader's Digest Ass'n, Inc.,*
    501 P.2d 290 (Wash. 1972) ......................................................................................24

*Thornell v. Seattle Serv. Bureau, Inc.,*
    363 P.3d 587 (Wash. 2015) .........................................................................................3

*W. Telepage, Inc. v. City of Tacoma Dep't of Fin.,*
    998 P.2d 884 (Wash. 2000) .........................................................................................9

**Rules and Statutory Provisions**

Fed. R. Civ. P. 8......................................................................................................21

Fed. R. Civ. P. 12...............................................................................................3, 13

Fed. R. Civ. P. 56.............................................................................................13, 22

RCW 4.24......................................................................................................5, 6, 10

v

RCW 9.46 ............................................................................... 3, 6, 8, 11

RCW 19.86 ............................................................................................. 24

RCW 41.05 ............................................................................................... 3

RCW 82.04 ............................................................................................... 3

**Other Authorities**

2017 Sci. Games Corp. Form 10-K
      https://cite.law/87BH-ZTNU .................................................. 23

"How Do I Earn High 5 Club Points"
      (June 28, 2018), https://cite.law/3A7X-RNLJ ............................ 23

Letter from Suzie Kelly to Washington State Gambling Commission,
      http://cite.law/U725-VZYF .................................................... 23

"Leveling Up and Gaining Experience,"
      https://cite.law/NZ4U-R9V2 ................................................. 23

Oral Argument, *Kater v. Churchill Downs, Inc.* (Feb. 6, 2018),
      https://youtu.be/_c2MdanqaX4?t=21m38s ................................ 8

"Natasha Dow Schüll, *Addiction by Design: Machine Gambling in Las Vegas*
      2, 2014 ............................................................................................. 2

"Savvy Seniors,"
      https://cite.law/J6DC-27LV ................................................... 23

"Slotomania Rewards,"
    https://cite.law/N82N-2LQQ .................................................. 23

"Super Slot Play Thursdays,"
      https://cite.law/KRN5-T49F .................................................. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## INTRODUCTION

The defendants in these three lawsuits, Scientific Games Corp. ("Scientific Games"), PTT, LLC and High 5 Games, LLC (collectively, in the singular, "High 5"), and Playtika Ltd. and Playtika Holding Corp. (collectively, in the singular, "Playtika"), all operate what are known in the gambling app industry-speak as "free-to-play" games. That term is a misnomer, because the games aren't free. Rather, they are unlicensed, unregulated, and unlawful gambling games that prey on consumers with gambling addictions. Defendants regularly tout that more than 90 percent of their players play for free. But their nine-figure revenues don't come from those 90 percent. They come from the 10 percent of players who spend and lose money—a lot of money—at the unlawful casino games that Defendants offer.

And while Defendants may, "like Captain Renault in *Casablanca*, purport[] to be shocked—shocked!—to find that [their games] could constitute illegal gambling," the Ninth Circuit was not. *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018). Under Washington law, Defendants' games are illegal gambling, regardless of whether players can win cash by playing the games. And because Washington law permits recovery of the value of anything of value lost at an illegal gambling game, Plaintiffs Sheryl Fife and Sean Wilson have stated claims to recover the money they put into Defendants' casino games.

## BACKGROUND

### I.   Defendants' Casino Games.

Defendants make money by offering electronic versions of popular casino games, mostly slot machines. (*Sci. Games* Compl. ¶¶ 2-3; *High 5* Compl. ¶¶ 2-3; *Playtika* Compl. ¶¶ 2-3.) Like brick-and-mortar casinos, Defendants' online casino games operate by enticing players to open their wallets to get credits—variously called "chips" or "coins"—which are required to play the games. (*Id.*) Defendants offers various packages, ranging from $1.99 to $50 or more. (*Sci. Games* Compl. ¶ 24; *High 5* Compl. ¶ 25; *Playtika* Compl. ¶¶ 28-29.)

Resp. to Mot. to Dismiss - 1
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1    Using their credits, players wager at games that look and function like slot machines.

2    (*Sci. Games* Compl. ¶¶ 27-29; *High 5* Compl. ¶¶ 27-29; *Playtika* Compl. ¶¶ 31-34.) Players at

3    these machines choose how many chips they want to bet each time they pull the lever, which

4    determines the size of the jackpot they stand to win. (*Id*.) For example, a player betting $1 worth

5    of chips might gain ten times that amount, allowing her to continue to play the game for longer

6    than she otherwise would have been able. Players can continue to play the game as long as they

7    keep winning credits. (*Id.*) Invariably however, players run out. And each time players run out of

8    credits, the games are disabled and replaced with a notice that they must pay real money in order

9    to continue playing. (*Sci. Games* Compl. ¶ 27; *High 5* Compl. ¶ 25; *Playtika* Compl. ¶ 25.) Ms.

10   Fife spent money on and lost credits at Scientific Games' slot machine games, and Mr. Wilson

11   did the same at both High 5's and Playtika's similar games. (*Sci. Games* Compl. ¶¶ 30-31; *High*

12   *5* Compl. ¶¶ 30-31; *Playtika* Compl. ¶¶ 35-37.)

13   The gambling app industry refers to games like these as "free-to-play," but that phrase is

14   a misnomer. (*Sci. Games* Compl. ¶ 11; *High 5* Compl. ¶ 11; *Playtika* Compl. ¶ 12.) While

15   Defendants provide players with a relatively small allotment of promotional chips in an effort to

16   entice them to play the game, the casino games cost money to play. (*Sci. Games* Compl. ¶ 23;

17   *High 5* Compl. ¶ 23; *Playtika* Compl. ¶ 26.) And for the relatively small number of gambling

18   addicts who produce a huge share of industry revenue, their addiction to playing these games can

19   cost even more than that, even without the prospect of being able to win money. (*Sci. Games*

20   Compl. ¶ 15; *High 5* Compl. ¶ 15; *Playtika* Compl. ¶ 16.) That's because people who gamble at

21   slot machines play "not to *win* but simply to *continue*." Natasha Dow Schüll, *Addiction by*

22   *Design: Machine Gambling in Las Vegas* 2, 12 (2014) (emphasis in original). "[I]t is not the

23   chance of winning to which [machine gamblers] become addicted; rather, what addicts them is

24   the world-dissolving state of subjective suspension and affective calm they derive from machine

25   play." *Id.* at 19. All the while, they keep feeding money into the machine, destroying families

26   and causing financial ruin. *See generally id.* at 189-234.[1]

27   _____

[1]   The Court can consider the references to Dr. Schüll's book as legislative facts because they "do not involve the

Resp. to Mot. to Dismiss - 2
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax. 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## II.      Washington's Gambling Loss Recovery Act.

Because of these and other concerns, gambling in Washington is limited in scope and operates "by strict regulation and control." RCW 9.46.010. Running casino games for profit requires a license and constant supervision by the Washington State Gambling Commission. *See* RCW 9.46.070. Licensees must pay a percentage of their gambling income into Washington's problem gambling account, RCW 82.04.285(2), which funds "the prevention and treatment of problem and pathological gambling," RCW 41.05.0005; 41.05.0006. They must also display the following warning, verbatim, on their premises and in all of their advertising:

> CAUTION: Participation in gambling activity may result in pathological gambling behavior causing emotional and financial harm. For help, call 1-800-547-6133.

RCW 9.46.072.

These regulations—and the loss recovery statute—are broad measures designed to protect the public from the conduct of Washington companies engaged in a line of business that can easily become unscrupulous and socially undesirable if not closely monitored and regulated. *See* RCW 9.46.010. The legislature directed that the anti-gambling regime be "liberally construed" to, among other goals, "promote the social welfare of the people" and "restrain all persons from seeking profit from professional gambling activities in this state[.]" *Id.*; *cf. Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587, 592 (Wash. 2015) (recognizing that liberally construed consumer protection statutes should apply to "acts that directly or indirectly affect the people of Washington").

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, "[a] court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (internal quotation marks omitted). "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint[.]" *Khoja v. Orexigen Therapeutics, Inc.*, No. 16-56069, 2018 WL

---

facts of this case, but rather have relevance to legal reasoning namely the proposed interpretation of" Washington's gambling laws. *See Owino v. Holder*, 771 F.3d 527, 534 n.4 (9th Cir. 2014) (internal quotation marks omitted).

Resp. to Mot. to Dismiss - 3
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax. 206.682.2992

1   3826298, at *5 (9th Cir. Aug. 13, 2018). While there are two exceptions to this general rule, the

2   incorporation-by-reference doctrine and judicial notice, the "overuse and improper application"

3   of these exceptions "can lead to unintended and harmful results." *Id.* at *6

## ARGUMENT

5   Defendants first attack Plaintiffs claims by each arguing that the virtual coins needed to

6   play the game are not a "thing of value" as required under the Washington Gambling Loss

7   Recovery Act. Although it is hardly apparent from Defendants' briefs, the bulk of the legal

8   issues in these cases have largely already been decided by the Ninth Circuit. The allegations in

9   these cases are nearly identical to those in *Kater v. Churchill Downs Inc.*, and Defendants'

10  arguments are nearly identical to those the Ninth Circuit rejected in *Kater*.

11  Next, Defendants each try to shoehorn their games into a statutory exception for "bona

12  fide business transactions." But basic principles of statutory interpretation in Washington

13  demonstrate that the exception is meant to apply only to securities, futures, and insurance

14  contracts, not casino games.

15  The rest of Defendants' arguments regarding the definition of gambling rely on external

16  materials that they have improperly attached to their motions to dismiss. Each defendant attaches

17  declarations designed to draft an entire purportedly factual record at the pleading stage. That is

18  impermissible. The Court cannot consider those materials without providing notice that it intends

19  to convert the motions to dismiss into motions for summary judgment. If that happens, Plaintiffs

20  will request discovery and, as they explain, expect to find facts significantly different from the

21  one-sided presentation Defendants have offered.

22  Finally, two of the defendants also seek to dismiss Plaintiffs' Consumer Protection Act

23  and unjust enrichment claims. Their arguments ignore Washington Supreme Court precedent and

24  the Washington Constitution, and they are wrong as a matter of law.

25  **I.      The Ninth Circuit's Decision in *Kater* Is Largely Dispositive.**

26  While numerous companies operate in the mobile casino arena and their in-game

27  terminology differs, the games themselves are homogenous. As Plaintiffs will prove later in the

Resp. to Mot. to Dismiss - 4
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

litigation, that is hardly coincidental. The techniques these companies use to drive addicts to their games are well-documented and have been the subject of significant academic research. (*See High 5* Compl. ¶¶ 17-19; *Playtika* Compl. ¶¶ 18-20; *Sci. Games* Compl. ¶¶ 17-19.)

That's why the complaints in each of these cases, as well as the *Kater* case, are extremely similar.[2] In *Kater*, the Ninth Circuit addressed a game—Big Fish Casino—that is identical in every relevant aspect to the games described in the complaints here. The court decided that Big Fish Casino is gambling under Washington law because the credits used to play that game are "things of value," even though they cannot be exchanged for cash. *Kater*, 886 F.3d at 787-88. As explained in detail below, *Kater* is dispositive on that issue and all of the issues it addresses. *See Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992) (holding that the Ninth Circuit's "interpretation of [state] law is 'binding in the absence of any subsequent indication from the [state] courts that [the Circuit's] interpretation was incorrect.'") (internal citation omitted).

A.     **In-Game Credits that Cost Money and Allow Free Play Are Things of Value.**

Historically, common law provided no recourse for people who lost money gambling. *Heitfeld v. Benevolent & Protective Order of Keglers*, 220 P.2d 655, 659 (Wash. 1950). However, the Washington Legislature modified the traditional rule "based upon the idea that, if gambling is to be discouraged, one way in which it might be done would be to permit recovery by the loser and at the same time protect those inclined to gamble against their weakness and improvidence[.]" *O'Neil v. Crampton*, 140 P.2d 308, 310 (Wash. 1943). As such, Washington law provides that:

> All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost.

---

[2]     It is not, as High 5 argues, because "Plaintiff's Counsel Seeks to Manufacture a Series of Class Actions Based on a New, but Potentially Short-lived, Interpretation of Gambling." (High 5 Mot. at 5.) All three defendants attack the motivations of Plaintiffs' counsel (*see id.*; Sci. Games Mot. at 18; Playtika Mot. at 1), although it is unclear why. Such attacks on counsel are unhelpful and unpersuasive. *See Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV0087-GPC-MDD, 2017 WL 6371849, at *1 (S.D. Cal. Dec. 13, 2017).

Resp. to Mot. to Dismiss - 5
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

RCW 4.24.070.

Although some forms of gambling are legal in Washington, all online gambling is illegal. *Kater*, 886 F.3d at 786. In Washington, "gambling" is defined by statute as:

> [1] staking or risking something of value [2] upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, [3] upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome.

*Id.* at 784 (quoting RCW 9.46.0237 with alterations). Any activity that meets the definition in RCW 9.46.0237 and takes place online is therefore illegal gambling.

Defendants' games all operate online, and are contests of chance, as nothing the player can do will affect the outcome. (*Sci. Games* Compl. ¶ 28; *High 5* Compl. ¶ 28; *Playtika* Compl. ¶ 33.) Before *Kater*, the only open question was whether the virtual chips that players wager are "something of value" under the statute, even if they cannot be exchanged for cash. Despite Defendants' apparent disagreement, the Ninth Circuit has definitively answered yes to that question.

RCW 9.46.0285 defines "thing of value" to include three categories:

> [1] any money or property, [2] any token, object or article exchangeable for money or property, or [3] any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

Here, the relevant part of the statute is the last one: Defendants' credits "are a 'thing of value' because they are a 'form of credit ... involving extension of ... entertainment or a privilege of playing [the casino game] without charge.'" *Kater*, 886 F.3d at 787 (quoting RCW 9.46.0285). The Ninth Circuit succinctly explained why:

> The virtual chips, as alleged in the complaint, permit a user to play the casino games inside the virtual Big Fish Casino. They are a credit that allows a user to place another wager or re-spin a slot machine. Without virtual chips, a user is unable to play Big Fish Casino's various games. Thus, if a user runs out of virtual chips and wants to continue playing Big Fish Casino, she must buy more chips to have "the privilege of playing the game." Likewise, if a user wins chips, the user wins the privilege of playing Big Fish Casino without charge. In sum, these virtual chips extend the privilege of playing Big Fish Casino.

Resp. to Mot. to Dismiss - 6
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1    *Id.* (internal citations omitted). Because the virtual chips in Big Fish Casino are things of value,

2    Big Fish Casino is an illegal gambling game, and the plaintiff was entitled to recover the value of

3    the chips she lost. *Id.* at 788-89.

4         Treating the allegations in Plaintiffs' complaints here as true, Defendants' games operate

5    the same way as Big Fish Casino and are therefore also illegal gambling games. Each game

6    looks like a slot machine and is a game of chance. (*Compare Kater* Compl. ¶¶ 2, 31[3] *with High 5*

7    Compl. ¶¶ 1, 27-28; *Playtika* Compl. ¶¶ 1, 4, 32; *Sci. Games* Compl. ¶¶ 2, 27.) Each game sells

8    credits—be they called "chips" or "coins"—that allow players to play the game. (*Compare Kater*

9    Compl. ¶¶ 26-28 *with High 5* Compl. ¶¶ 23-25; *Playtika* Compl. ¶¶ 26-28; *Sci. Games* Compl.

10   ¶¶ 24-25.) Players who win the games, entirely by operation of chance, get more credits that

11   allow them to continue playing without having to pay. (*Compare Kater* Compl. ¶¶ 52-53, 56 *with*

12   *High 5* Compl. ¶¶ 45, 47, 50; *Playtika* Compl. ¶¶ 51, 53, 56; *Sci. Games* Compl. ¶¶ 45, 47, 50.)

13   Each game offers a limited amount of promotional credits, but players must exchange real-world

14   United States Dollars to obtain more credits after those promotional credits run out. (*Compare*

15   *Kater* Compl. ¶¶ 26-28 *with High 5* Compl. ¶¶ 23-25; *Playtika* Compl. ¶¶ 26-28; *Sci. Games*

16   Compl. ¶¶ 24-25.) None of the games allow players who are out of credits to keep playing. *Id.*

17        To arrive at the determination that such games are gambling, the Ninth Circuit relied on

18   *Bullseye Distributing LLC v. State Gambling Commission*, 110 P.3d 1162 (Wash Ct. App. 2005).

19   *Bullseye* involved a machine that "utilized play points that [players] obtained by purchase, by

20   redeeming a once-a-day promotional voucher, or by winning a game on the machine." *Kater*,

21   886 F.3d at 787. Agreeing with the Gambling Commission, the *Bullseye* court "concluded that

22   the game's play points were 'things of value' because 'they extend[ed] the privilege of playing

23   the game without charge,' even though they 'lack[ed] pecuniary value on their own.'" *Id.*

24   (quoting *Bullseye*, 110 P.3d at 1166). In other words, it didn't matter that the game could be

25

26   _____

27   [3]   The complaint of Cheryl Kater is attached as Exhibit G to High 5's request for judicial notice. As it is a public
     document whose authenticity cannot reasonably be questioned (it's file-stamped), it can be judicially noticed for its
     existence and authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

Resp. to Mot. to Dismiss - 7
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1    played for free sometimes, because the prize that people could win allowed them to continue

2    playing the game.

3        Defendants attempt to distinguish *Bullseye* on the basis that its holding purportedly

4    centers on players' ability to redeem credits for money or merchandise. (Sci. Games Mot. at 16-

5    17; Playtika Mot. at 19.) The Ninth Circuit considered this argument and expressly disagreed:

6        Contrary to Churchill Downs' assertion, nothing in *Bullseye* conditioned the court's
         determination that the play points were "thing[s] of value" on a user's ability to
7        redeem those points for money or merchandise. Instead, *Bullseye*'s reasoning was
         plain—"these points fall within the definition of 'thing of value' because they
8        extend the privilege of playing the game without charge." *Id.* at 1166. Based on the
         reasoning in *Bullseye*, we conclude that Big Fish Casino's virtual chips also fall
9        within section 9.46.0285's definition of a "thing of value."

10   *Kater*, 886 F.3d at 787-88. That's what's going on here: even if the items wagered at

11   Defendants' games do not have any inherent pecuniary value, they nevertheless extend players

12   the privilege of playing the game, which would otherwise cost money.

13       Like Defendants here, the defendant in *Kater* attempted to argue that its games were free

14   "because users receive free chips throughout gameplay, such that extending gameplay costs them

15   nothing." *Id.* at 787. The Ninth Circuit declined to consider that argument because it was not

16   alleged in the complaint, *id.*, although at oral argument, Judge Smith expressed skepticism. *See*

17   Oral Argument, *Kater v. Churchill Downs, Inc.* (Feb. 6, 2018),

18   https://youtu.be/_c2MdanqaX4?t=21m38s ("It gets people going by giving them free chips. But

19   ... isn't the fact that people can continue to play by buying—doesn't it make it the thing of value

20   because they want to continue to play?").

21       Similarly, Plaintiffs here do not allege that the games are free, or that free coins are

22   regularly available. The allegations Defendants point to that are purportedly to the contrary also

23   appear in the *Kater* complaint, which, as a matter of law, did not include an allegation that the

24   games were free. For example, Playtika points to the allegation that it "provides visitors of its

25   online slot machines a bundle of free 'coins' that can be used to wager" (*Playtika* Compl. ¶ 2),

26   which also appears in the *Kater* complaint. (*Kater* Compl. ¶ 26.) The rest of Defendants'

27

Resp. to Mot. to Dismiss - 8
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1    arguments on this front are based on improper external evidence, which is addressed in Section

2    III, *infra*.

3         As far as these complaints are concerned, the "thing of value" question is closed. In its

4    examination of substantively identical allegations in *Kater*, the Ninth Circuit determined that the

5    game at issue was illegal gambling under Washington law because the credits wagered at the

6    games were things of value. Defendants may disagree with the Ninth Circuit's decision and

7    disparage it as "*controversial*[.]" (High 5 Mot. at 6) (emphasis in original). But controversial or

8    not, it is the law in this Circuit. Given a nearly identical fact pattern to *Kater*, Defendants'

9    request that this Court to decide the issue differently must be denied.

10        **B.    This Court Is Bound by the Ninth Circuit, Not a Pamphlet.**

11        Defendants also refer to a pamphlet created by staff of the Washington Gambling

12   Commission. (*See* Playtika Mot. at 18-19; Sci. Games Mot. at 17-18; High 5 Mot. at 24.) The

13   Ninth Circuit reviewed these *exact* materials and concluded that they are not binding and should

14   not be deferred to. Specifically, the court held:

15           Churchill Downs argues that we should defer to the Gambling Commission's
             conclusion that Big Fish Casino is not illegal gambling. It cites to a slideshow deck
16           used by two non-Commission members during a presentation to the Commission,
             and the accompanying meeting minutes, but these documents do not indicate that
17           the Commission adopted a formal position on social gaming platforms .... It also
             cites to a two-page Commission pamphlet discussing online social gaming. But the
18           pamphlet provides only "general guidance," to which we do not defer because the
             pamphlet "lacks an official, definitive analysis of the issue in question." *W.*
19           *Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wash.2d 599, 998 P.2d 884,
             891–92 (2000) (requiring agency interpretation to be "clear and definitive," such as
20           a rule, interpretive guideline, or policy statement).

21   *Kater*, 886 F.3d at 788 (footnote omitted).

22        Faced with a request to consider the exact same materials in the exact same context, this

23   Court must come to the same conclusion.[4]

24   ───────────────────
     [4]   After *Kater*, Big Fish petitioned the Gambling Commission to reverse the Ninth Circuit's decision. The petition
25   was considered at length at the August 9, 2018 Commission meeting, but the Commission continued the matter. (Ex.
     A.) Several commissioners expressed doubt about Big Fish's position that its games are not gambling, including one
26   who compared its business model to a "crack dealer" who "gives somebody ... free pieces of crack" then says "if
     you want more then it's gonna cost ya." (Ex. B. at 56-57.) The Commission's order and the audio recording of the
27   relevant portion of the meeting, available at https://edelson.box.com/v/WSGC, are public records appropriate for
     judicial notice. A transcript of the recording, attached hereto as Exhibit B, is provided for the Court's convenience.

─────────────────────────────────────────────

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

**C.      Defendants Cannot Rely on Authority that the Ninth Circuit Rejected.**

Each defendant relies heavily on out-of-circuit decisions applying Maryland, Illinois, and California law to support its positions. Scientific Games, perhaps forgetting about the binding Ninth Circuit opinion on the topic, even claims that "every court to assess similar social games has rejected the theory ... that the games constitute gambling." (Sci. Games Mot. at 17.) Playtika relies on the district court's decision in *Kater*, which the Ninth Circuit reversed. (Playtika Mot. at 20.) And High 5 asks the Court to rely on cases from "[d]istrict courts around the country," (High 5 Mot. at 5), although "across the country" might have been more appropriate, considering that they come up with only two districts.

In fact, the Ninth Circuit considered— and rejected— all of the other cases that Defendants cite. *Compare Kater*, 886 F.3d at 788 ("Each case Churchill Downs cites for this proposition involves the analysis of different state statutes, state definitions, and games. *See Mason v. Mach. Zone, Inc.*, 851 F.3d 315 (4th Cir. 2017) (applying Maryland law); *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731 (N.D. Ill. 2016) (applying Illinois law); *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871 (N.D. Ill. 2016) (applying California law).") *with* High 5 Mot. at 5 (asking the Court to rely on *Phillips*, *Soto*, and the district court's decision in *Mason*); Sci. Games Mot. at 16-17 (same); Playtika Mot. at 19-20 (same). None of the Defendants acknowledge this portion of the opinion.

Playtika goes a step further, relying heavily on the *Phillips* and *Mason* decisions to argue that its games should not be considered gambling because Playtika purportedly does not stake anything and because its form of credits cannot be redeemed for cash. (Playtika Mot. at 22.) The Ninth Circuit offers a detailed explanation of the inapplicability of *Mason* that needs no further discussion. *See Kater*, 886 F.3d at 788. *Kater* also cites and rejects *Phillips*, a case interpreting an Illinois statute that permits recovery only from a "winner" of a gambling game. *Phillips*, 173 F. Supp. 3d at 739. Washington's broader law, by contrast, permits recovery from "from the dealer ... or from the proprietor for whose benefit such game was played" *Kater*, 886 F.3d at 789 (quoting RCW 4.24.070). Mr. Wilson alleged that "Defendants are the proprietors for whose

Resp. to Mot. to Dismiss - 10
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

benefit the online gambling games are played because they own (or owned) the Playtika online

casino games and operate those games for their own profit." (*Playtika* Compl. ¶ 52.) He alleges

specifically that Playtika generated almost $280 million in revenue, and that the revenue came in

part from the games Mr. Wilson played. (*Id.* ¶ 24.) Under Washington law—the only law that

matters here—that is sufficient to allow Mr. Wilson to recover from Playtika.

In short, Defendants cannot escape Washington law by relying on out-of-circuit cases

that apply the laws of other states whose application has already been rejected by the Ninth

Circuit. *See Knox v. Davis*, 260 F.3d 1009, 1015 (9th Cir. 2001) (rejecting reliance on out-of-

circuit authority when sufficient binding authority existed to allow the court to decide the case).

## II.   Casino Games Do Not Trigger the Bona Fide Business Transaction Exception.

Defendants each rely on the statutory exception for "bona fide business transactions valid

under the law of contracts" to excuse their illegal gambling operations. According to Defendants,

because their games are offered for entertainment, they are bona fide business transactions that

are exempted from the statutory definition. This argument wholly ignores Washington's rules of

statutory interpretation.

The full text of exception that Defendants attempt to invoke reads:

> Gambling does not include fishing derbies as defined by this chapter, parimutuel
> betting and handicapping contests as authorized by chapter 67.16, bona fide
> business transactions valid under the law of contracts, including, but not limited to,
> contracts for the purchase or sale at a future date of securities or commodities, and
> agreements to compensate for loss caused by the happening of chance, including,
> but not limited to, contracts of indemnity or guarantee and life, health, or accident
> insurance.

RCW 9.46.0237. Washington's rules of statutory interpretation, which the Court is required to

apply, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004), preclude

Defendants' broad reading of the term "bona fide business transactions."

"Washington courts have consistently interpreted the statutory language, 'including but

not limited to,' to indicate the legislative intent to create an illustrative, not exhaustive, list."

*State v. Joseph*, 416 P.3d 738, 741 (Wash. Ct. App. 2018) (citing *State v. Larson*, 365 P.3d 740,

743 (Wash. 2015)). The existence of an illustrative list does not create the kind of statutory

Resp. to Mot. to Dismiss - 11
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

ambiguity that would allow a court to rely on external interpretive tools. *Id.* Rather, "Washington courts have a recognized method for interpreting such lists within a statute. Where a general term ... is modified by a nonexclusive list, the general term will be deemed to 'incorporate those things similar in nature or 'comparable to' the specific terms.'" *Id.* (quoting *Larson*, 365 P.3d at 743); *see also Larson*, 65 P.3d at 743 ("[T]he plain language of [the statute] indicates that the illustrative examples were intended to *limit* the scope of the statute.").

Because this statute uses the phrase "including but not limited to," the question here is whether Defendants' games are "of a similar nature" or "comparable" to the illustrative examples provided by the legislature. *See Joseph*, 416 P.3d at 741. Defendants' games are not remotely similar to futures contracts. They are video slot machines. The people who use them are "players," not "investors." Players do not receive any ownership in a company or any promise of any such future ownership. Their activities in the game are not subject to federal futures trading regulations. In short, Defendants' activities are no closer to "bona fide business transactions" than they are to fishing derbies.[5]

### III.   The Court Cannot Consider Defendants' External Evidence that Purports to Contradict Plaintiffs' Complaints.

Perhaps realizing that they are unable to argue around the *Kater* decision, Defendants each attach declarations to their motions to dismiss as though this were summary judgment. They then use these declarations to contradict the pleadings. Playtika argues, for example, that this case is different from *Kater* because there is "evidence in the record demonstrating that players are not required to purchase virtual coins to 'extend gameplay.'" (Playtika Mot. at 17.) Scientific Games contends that "the record before this Court demonstrates that players can play for free and continually extend play for free." (Sci. Games Mot. at 14.) And High 5 references the "materially different facts" in this case as compared to *Kater*, based not on the complaint but on a declaration it submitted. (High 5 Mot. at 21.)

---

[5]   The "bona fide business transaction" exception does not apply to baseball tickets as Playtika suggests. (*See* Playtika Mot. at 22.) If baseball tickets worked like Playtika's games, spectators at Safeco Field would have to throw money into the outfield to keep their seats when the Mariners started to lose.

Resp. to Mot. to Dismiss - 12
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

But these are motions to dismiss under Rule 12(b)(6). There is no "evidence" in the record, because evidence cannot be considered at the motion to dismiss stage. *Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 687 (9th Cir. 2013) ("[T]he inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence."). The record before the court *only* "demonstrates" Plaintiffs' allegations and matter that is subject to judicial notice.

Ignoring these basic principles of civil procedure, Defendants ask the Court to resolve a question on the pleadings by looking to, among other things, extrajudicial statements purportedly made by Defendants, an iPad loaded with an app, declarations of their officers, and their internal corporate records. None are documents included in the the complaints in these actions, and none are judicially noticeable for the facts contained within them. The Court cannot consider these external materials or the arguments based on them without providing notice and converting the motions to dismiss into summary judgment motions. With limited exceptions, the extrinsic documents should be stricken from the record, and the arguments based on them should be disregarded. Defendants simply cannot unilaterally draft the record in this case.

It is black-letter law that "if a district court considers evidence outside the pleadings, it must normally convert [a] 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). There are limited exceptions to this general rule: "[a] court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

No documents are attached to any of the complaints, so only the second two categories could possibly apply here, and each is strictly limited. The incorporation by reference doctrine allows courts to "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). "Judicial notice ... permits a

Resp. to Mot. to Dismiss - 13
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

court to notice an adjudicative fact if it is not subject to reasonable dispute. A fact is not subject to reasonable dispute if it is generally known, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja*, 2018 WL 3826298, at *7 (internal quotation marks and citations omitted). Typically, that means public records. *See id.* "The Ninth Circuit has indicated that judicial notice should only be taken sparingly, with caution, and after demonstration of a 'high degree of indisputability.'" *Stitt v. San Francisco Mun. Transp. Agency*, No. 12-CV-03704 YGR, 2013 WL 121259, at *2 (N.D. Cal. Jan. 8, 2013) (quoting *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005)).

The Ninth Circuit recently addressed a "concerning pattern" of "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja*, 2018 WL 3826298, at *6. As the court explained:

> Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. ... If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief. ... Such undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine.

*Id.* The court went on to "conclude that, in dismissing the action, the district court abused its discretion by improperly considering materials outside the Complaint." *Id.* at *1.

The pattern the Ninth Circuit described in *Khoja* is just what Defendants attempt here. Each defendant attached a number of documents to its motion to dismiss, and each offers little in the way of explanation for why it was proper to do so. As explained in detail below, the documents cannot be relied upon without converting Defendants' motions to motions for summary judgment. Accordingly, Plaintiffs respectfully request pursuant to Local Rule 7(g) that all references to the declarations and exhibits in the 12(b)(6) motions be stricken. *See, e.g.*, *Roshandel v. Chertoff*, No. C07-1739MJP, 2008 WL 1969646, at *3 (W.D. Wash. May 5, 2008) (striking declarations attached to motion to dismiss); *In re Applied Micro Circuits Corp. Sec.*

Resp. to Mot. to Dismiss - 14
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1  *Litig.*, No. 01-CV-0649 K AJB, 2002 WL 34716875, at *3 (S.D. Cal. Oct. 4, 2002) (striking six

2  declarations because they "are obviously not referenced in, and therefore fall outside of, the

3  amended complaint.").

4       **A.     Declarations.**

5       To start, each defendant asks the Court to rely on declarations they submitted. The

6  contents of the declarations are wide-ranging, but they include statements about how the games

7  in the complaints purportedly function, claims about corporate policies, attempts to authenticate

8  documents, specific discussion of Mr. Wilson's playing habits, and—in one case—a bare denial

9  of liability that one defendant treats as dispositive.

10      Each of those declarations is dated after the date of the complaints. The complaints could

11 not have relied on those declarations or alleged their contents, because the declarations did not

12 exist when the complaints were drafted. They cannot therefore have been incorporated by

13 reference. *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997) (holding that declarations

14 could not be considered on a motion to dismiss where they sought to explain allegations in the

15 complaint).

16      The declarations are also not properly the subject of judicial notice because "[t]he facts

17 surrounding" their contents "are not matters generally known throughout the Western District of

18 Washington nor are the authors sources whose accuracy cannot reasonably be questioned."

19 *Holland v. King Cty. Adult Det.*, No. C12-0791JLR, 2013 WL 1192763, at *2 (W.D. Wash. Mar.

20 22, 2013). Rather, they are the statements of Defendants' officers made for the purpose of

21 litigation. They are wholly lacking in the guarantees of accuracy that are required for judicial

22 notice to be appropriate. *See, e.g.*, *Turnacliff v. Westly*, 546 F.3d 1113, 1120 n.5 (9th Cir. 2008)

23 (declining to take judicial notice of declaration where facts were not generally known and where

24 the declarant was a party's former employee); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855,

25 858 n.3 (9th Cir. 2008) (declining to take judicial notice where "accuracy of the declaration is

26 subject to reasonable dispute").

27      One declaration requires more detailed discussion. Defendant Playtika Holding Company

Resp. to Mot. to Dismiss - 15
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

("PHC") seeks to be dismissed from this lawsuit based on a single paragraph in the declaration of the Chief Financial Officer of Playtika, Ltd. According to PHC, because its CFO has denied that the allegations in the complaint relate to its conduct, it should be immediately dismissed without discovery. But Mr. Wilson alleges that PHC owns and operates the games at issue in his case, and that the games are played for its benefit. (*Playtika* Compl. ¶ 24.) That allegation must be credited and the declaration ignored. *See, e.g.*, *Cooper*, 137 F.3d at 623 (declining to consider declaration attached to motion to dismiss); *Fields v. Wise Media LLC*, No. 12-cv-05160, 2013 WL 12174296, at *5 (N.D. Cal. Jan. 25, 2013) (refusing to consider declaration that contradicts allegations on a motion to dismiss). If Mr. Wilson learns in discovery that PHC *really* obtained no benefit from the games at issue, he will dismiss his case against them. If he learns—as he alleged in good faith and believes is far more likely—that PHC reaps the profits of the game, then he will continue to seek damages. Either way, there is no legal basis to dismiss PHC at the pleading stage based on its denial of the allegations.

Defendants' reliance on post-complaint declarations is "nothing more than another way of disputing the factual allegations in the complaint[.]" *See Khoja*, 2018 WL 3826298, at *10. The Court cannot consider the statements in the declarations without converting Defendants' motions to dismiss into motions for summary judgment.

**B.      Scientific Games' Copy of Video Game, Video, and Screenshot.**

The purported "current copy" of the Jackpot Party Casino game, the video of someone playing it, and the screenshots of that video, which were all submitted by Scientific Games, are also not subject to the incorporation by reference doctrine. One screenshot shows a sign-on screen for the user "fvsgipad@gmail.com." (Martin Decl. Ex. C at 3.) The "fvsg" in that email address refers to the caption of the lawsuit *Fife v. Scientific Games*, which Scientific Games was not aware of until after it was served with the complaint. The video, the copy of the game, and the screenshot must therefore have been created after the lawsuit was filed, and the complaint could not have been based on them.

Resp. to Mot. to Dismiss - 16
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

Scientific Games does reference the complaint in conjunction with its external materials, but it cannot demonstrate that the contents of those materials are alleged in the complaint. True, the complaint references the video game in question, but that does not mean that the contents of the game are alleged. For example, in *Cooper v. Pickett*, the plaintiff made allegations about the contents of a conference call, but it did not attach a transcript of the call to its complaint. 137 F.3d at 623. When the defendant attached a purported transcript to its motion to dismiss, the plaintiff disputed the accuracy and the authenticity of the transcript, and the Ninth Circuit held that it could not be considered. *Id.*

Here, the authenticity of the game, video, and screenshot is similarly in question. Scientific Games does not have Ms. Fife's iOS device, and there is no reason to believe that the version of the game submitted in Scientific Games' exhibits is the same one that Ms. Fife played. Even if it is the same version, there is no reason to believe that the anonymous user who played those games in the video played them in the same manner as Ms. Fife, or that the game behaved the same way in the video as it did when Ms. Fife played it. *Cf. Cooper*, 137 F.3d at 623 (declining to consider declaration about internal projections when there was no guarantee that the projections discussed in the declaration were the ones referenced in the complaint). Those authenticity concerns distinguish this case from *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *3 (N.D. Cal. July 18, 2016) and *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005), where no party questioned the authenticity of the documents submitted.

In any event, Scientific Games' attempts to tie its submitted versions of the game, video, and screenshots to the complaint are attenuated, at best. It cites paragraphs 30-31 of the complaint to support its contention that Ms. Fife sometimes spun a "virtual wheel" for free coins, but those paragraphs say nothing about any wheels. It expands and artificially lightens the greyed-out background of one of the figures in the complaint to show that the game purportedly contains a button that reads "BONUS," MAX COINS," and "COLLECT." (Sci. Games Mot. at 15.) Setting aside that the image is illegible even after Scientific Games' alterations, those words

don't say anything about the coins being free, about them being available daily or hourly, about

hundreds of thousands of coins being available, or about any of the other purported facts that

Scientific Games improperly tries to insert into the complaint. The Court is required to construe

the complaint in the light most favorable to Ms. Fife, so if those fuzzy words are to be construed

at all, then they cannot be understood to provide free coins on demand. That is especially true

considering the part of the figure that did not need to be photoshopped, which contains the word

"BUY!" repeated five times next to amounts of money and quantities of coins. (*Id.*)

Scientific Games explains why it chose to invoke the incorporation-by reference doctrine

to attach the game, video, and screenshots to its motion: it believes that the complaint is

"demonstrably false," contains "falsehood[s]," and that Ms. Fife "falsely alleged" that the game

is not free. (Sci. Games Mot. at 2, 14.) In other words, it ignores the rule that well-pled

allegations are taken as true at this stage, and it is abusing the incorporation-by-reference

"doctrine to insert [its] own version of events into the complaint to defeat otherwise cognizable

claims." *See Khoja*, 2018 WL 3826298, at *10.

C.     **Defendants' Purported Statements Regarding Operation of Games.**

Scientific Games and High 5 each ask the Court to rely upon a number of statements that

purportedly appear on their websites. These statements similarly do not appear anywhere in

Plaintiffs' complaints, nor are they referenced. Rather, the statements "merely create[] a defense

to the well-pled allegations in the complaint." *Id.* at *10. Therefore, they cannot be considered

incorporated by reference.

More specifically, High 5's Exhibits A through E are statements about its games that

appear to be made by individuals identified only as "Claire" and "Elle," who may or may not

even be authorized to speak for High 5. Claire and Elle do not appear in Mr. Wilson's complaint,

and neither do the referenced statements. Further, as out-of-court statements offered for the truth

of the matter asserted, the exhibits are hearsay not falling under any exception, and it is far from

clear that they would be admissible even at trial. *See CertainTeed Corp. v. Seattle Roof Brokers*,

No. C 09-563 RAJ, 2010 WL 2640083, at *9 (W.D. Wash. June 28, 2010) ("His 'evidence'

1    consists of hearsay statements from unnamed roofers and other unnamed sources and his [own]

2    statement ..., along with the wholly unsubstantiated statements on his website. It is not likely that

3    any of his evidence is admissible[.]"). Certainly they have not been incorporated into the

4    complaint just because they happen to "address the basis of Wilson's claims" (*see* High 5 Mot. at

5    19 n.6), and the Court cannot consider them at this stage.

6        High 5's request that the Court take judicial notice of the "FAQ" pages on its website is

7    similarly specious. According to High 5, its own self-serving declaration and statements about

8    how the game works "cannot reasonably be questioned." (Req. Judicial Not. at 2.) To be clear,

9    these are not public records with some guarantee of accuracy, nor are they facts that are

10   generally known in this district. They are the untested statements of a representative of a party

11   regarding the party's proprietary software, the operation of which is the core issue in this

12   litigation. Such statements are not properly the subject of judicial notice. *Gerritsen v. Warner*

13   *Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (collecting cases and declining

14   to take judicial notice of documents on a party's website); *see also Turnacliff*, 546 F.3d at 1120

15   n.5; *Reusser*, 525 F.3d at 858 n.3. Even if the documents *were* public records, it would still be

16   improper to take notice of the facts contained in them, which is exactly what High 5 is asking the

17   Court to do. *See Khoja*, 2018 WL 3826298, at *7-9.

18       Scientific Games' request has the same problems. It asks that the Court consider a

19   statement purportedly made by "James Grant" on "Friday at 16:33." (Martin Decl. Ex. D.)

20   Again, neither this statement nor any reference to it appears anywhere in Ms. Fife's complaint,

21   even tangentially. The statement is also inadmissible hearsay, for the same reason as the

22   statements of Claire and Elle.

23       The out-of-court statements of Defendants and of anonymous persons purportedly

24   speaking on behalf of Defendants should be stricken.

25   **D.    Sean Wilson's Player Records.**

26       High 5 also attached to its motion internal documents that purportedly show Mr. Wilson's

27   history playing its games. One document purports to be a "user profile" and includes detailed

---

Resp. to Mot. to Dismiss - 19
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1    information about how much money and time Mr. Wilson has spent on each of High 5's games.

2    (Benson Decl. Ex. F.) The other two are lengthy spreadsheets that also purportedly detail Mr.

3    Wilson's use of High 5's system. (*Id.* Exs. G & H.)

4         These documents are not attached to Mr. Wilson's complaint. While Mr. Wilson's

5    complaint alleges that he played certain games, he makes no reference to any of these

6    documents. Nor could he have, as they appear to be proprietary documents that High 5 creates

7    and maintains internally. Without discovery, Mr. Wilson has no way to determine if these

8    documents are accurate or complete, and he has no obligation to believe High 5's representation

9    that they are. These documents cannot be considered without converting High 5's motion to a

10   summary judgment motion, and they should be stricken.[6]

11        **E.    Court and Agency Documents.**

12        Defendants also requests that the Court take judicial notice of a number of public records,

13   such as court opinions, complaints, appellate briefs, and publications of the Washington

14   Gambling Commission. Plaintiffs have no objection to the court's taking judicial notice of the

15   existence and authenticity of Exhibits A through L to High 5's request for judicial notice and

16   Exhibits E through I to the Declaration of David Martin in support of Scientific Games' motion

17   to dismiss. They are public records whose authenticity cannot reasonably be questioned.

18        Defendants' use of these documents, however, is problematic. While judicial notice of

19   public records is allowed, "a court cannot take judicial notice of disputed facts contained in such

20   public records." *Khoja*, 2018 WL 3826298, at *7. Where the meaning of a document could be

21   subject to "varying interpretations" or "reasonable dispute," then judicial notice is not

22   appropriate. *Id.* High 5 asks the Court to conclude that the Gambling Commission "issued a press

23   release denying any ... agreement with the Panel decision in *Churchill Downs*." (High 5 Mot. at

---

[6]    High 5 attempts to use those documents in support of its conspiracy theory that Mr. Wilson purchased the chips
in a "strategic action ... to further the class-action scheme" because he lost money at the gambling game "less than
three weeks after the *Churchill Downs* Ninth Circuit appeal was noticed for hearing." (High 5 Mot. at 6.) Like most
conspiracy theories, this one falls apart when examined. The appeal in *Kater* was noticed in January 2016, and the
Ninth Circuit announced the oral argument date in November 2017. (High 5 Req. Jud. Not. Ex. H.) Both of these
dates are months away from Mr. Wilson's December 2016 transaction with High 5. (*See id.*; *High 5* Compl. ¶ 30.)
Any suggestion that Mr. Wilson or his counsel "manufactured" this lawsuit is outrageous and false.

Resp. to Mot. to Dismiss - 20
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1   24.) But the press release, on its face, says nothing about whether the Commission agrees or

2   disagrees with the Ninth Circuit. (High 5 Req. for Jud. Not Ex. A.) Its meaning is ambiguous, at

3   best. Similarly, Defendants ask the Court to take judicial notice that the Gambling Commission

4   agrees with their position, which is foreclosed by *Kater*. (*See supra* § I.B.)

5        **F.**     **Playtika's Motion to Strike.**

6        At the end of its motion to dismiss, Playtika asks the Court to strike certain of Mr.

7   Wilson's allegations on the basis that external documents it submitted render those allegations

8   irrelevant. (Playtika Mot. at 24.) While a court can strike "immaterial ... matter" from a

9   complaint, "[m]otions to strike are not favored and should not be granted unless it is clear that

10  the matter to be stricken could have no possible bearing on the subject matter of the litigation.

11  When a court considers a motion to strike, it must view the pleading in a light most favorable to

12  the pleading party. A court must deny the motion to strike if there is any doubt whether the

13  allegations in the pleadings might be relevant in the action." *Luken v. Christensen Grp. Inc.*, No.

14  C16-5214-RBL, 2016 WL 5920092, at *2 (W.D. Wash. Oct. 11, 2016) (Leighton, J.) (internal

15  quotation marks and citations omitted).

16       Here, Playtika objects to the reference to the game "VDS," which Mr. Wilson does not

17  specifically allege that he played. But this is a class action complaint, and the proposed class

18  includes people who played *all* of Playtika's slot machine games. (*Playtika* Compl. ¶ 38.)

19  Accordingly, allegations relating to Playtika's other slot machine games will be relevant to the

20  class's claims, regardless of whether Mr. Wilson personally played them. If there are material

21  differences between the games, that can be addressed at class certification.

22       Playtika also seeks to strike references to the game "House of Fun" on the basis that it

23  submitted a declaration denying ownership of the game. (Playtika Mot. at 24.) The declaration

24  contradicts Mr. Wilson's allegation that Playtika owns and operates the House of Fun, which is

25  inappropriate at this stage. (*Playtika* Compl. ¶ 1.) And, as discussed above, the declaration is not

26  properly before the court. There is a mechanism for a defendant to deny the truth of an

27  allegation, *see* Fed. R. Civ. P. 8(b)(1), and it does not automatically render that allegation

Resp. to Mot. to Dismiss - 21
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1    irrelevant. The motion to strike should be denied.

2                            *                *                *

3         In short, this is not one of the "rare instances when assessing the sufficiency of a claim

4    requires" review of external documents, *see Khoja*, 2018 WL 3826298, at * 9, and the Court

5    should not consider the external materials that Defendants have submitted. If the Court intends to

6    consider those materials, then Plaintiffs request that they be given notice and an opportunity to

7    submit motions under Rule 56(d). Otherwise, the materials (with the exception of the court

8    documents and Gambling Commission materials) should be stricken without prejudice to their

9    reintroduction at a stage of litigation where introduction of evidence is appropriate.

10   **IV.    Defendants' Materials Contradict Their Claims That the Games Are Free.**

11        As explained in detail above, the Court should follow the guidance of the Ninth Circuit

12   and decline to consider Defendants' extra-record assertion that its games are free. Out of an

13   abundance of caution, however, Plaintiffs also note that Defendants' purported daily or hourly

14   giveaway of promotional chips likely does not affect their liability, although factual development

15   on this matter will be required.

16        Defendants' argument is effectively that because they claim to give away free chips

17   frequently, the games are free to play and the chips are therefore not things of value. On its face,

18   this makes little sense. Nothing in the statute to suggests that something that otherwise meets the

19   statutory definition of "thing of value" is somehow not a thing of value if someone gives it away

20   for free on occasion. It is simply implausible that this industry generated $3.8 billion in revenues

21   in 2017 solely by giving away its product for free. (*See Sci. Games* Compl. ¶ 12; *High 5* Compl.

22   ¶ 12; *Playtika* Compl. ¶ 13.)

23        And in addition to finding no support in the statute, Defendants' argument fails to

24   comport with common sense. "[F]ree samples and risk-free trials of products are common

25   marketing tools," *Bailey v. Morales*, 190 F.3d 320, 325 (5th Cir. 1999), and they are designed to

26   get consumers to spend money. Indeed, free slot play at traditional casinos is now ubiquitous and

27   "has largely replaced the issuance of cash for promotions, rebates and mail offers[.]" Steven M.

Resp. to Mot. to Dismiss - 22
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

Tousley Brain Stephens PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1   Gallaway, "The Beat Goes On," *Global Gaming Business Magazine* (July 26, 2016),

2   https://cite.law/5HRN-K742. Washington is no exception to the trend. Regular players at the

3   Ilani Casino in Ridgefield can earn "Status Points" that entitle them to free slot play, and 7

4   Cedars Casino in Sequim offers $5 of free play to seniors every Monday. "Super Slot Play

5   Thursdays," https://cite.law/KRN5-T49F; "Savvy Seniors," https://cite.law/J6DC-27LV.

6          That said, the way Defendants' games operate is not public, and the very documents

7   Defendants have submitted demonstrate that they're not telling the Court the whole story.

8   "Claire" says that "[y]ou can get free coins ... simply by returning to our app every four hours for

9   your 4-hour bonus," but she does not say how many coins players get or why such coins are only

10  available every four hours. (*See* Benson Decl. Ex. B.) "Elle" says that "[y]ou can also earn more

11  by moving up in VIP tier," and that "the VIP bonus is based on your VIP tier," but she doesn't

12  explain what this means. (*See* Benson Decl. Exs. B & D.)

13         Other pages on High 5's website—conveniently omitted from Mr. Benson's

14  declaration—suggest that VIP points are earned by spending money on credits. *See* "How Do I

15  Earn High 5 Club Points" (June 28, 2018), https://cite.law/3A7X-RNLJ. The other defendants

16  appear to have similar programs. *See* "Leveling Up and Gaining Experience,"

17  https://cite.law/NZ4U-R9V2; "Slotomania Rewards," https://cite.law/N82N-2LQQ. Materials

18  filed with the Washington Gambling Commission support the conclusion that it is common for

19  the amount and availability of free chips to depend on how much money someone spends

20  playing. *See* Letter from Suzie Kelly to Washington State Gambling Commission,

21  http://cite.law/U725-VZYF. That would make the "free" chips not free at all.

22         Scientific Games also repeatedly protests that its games are free, and that Ms. Fife's

23  allegations to the contrary are false. But in its own 10-K statement filed with the SEC, Scientific

24  Games tells its investors that "[s]ocial gaming revenues are generated from the sale of virtual

25  coins, chips or bingo cards ..., which players can use to play casino-style slot and table games or

26  bingo games (i.e. spin in the case of slot games, bet in the case of table games and use of bingo

27  cards in the case of bingo games)." 2017 Sci. Games Corp. Form 10-K at 85, *available at*

Resp. to Mot. to Dismiss - 23
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

1    https://cite.law/87BH-ZTNU. It is implausible that Scientific Games brought in $427.8 million in

2    2017 by selling something that is always free. *See id.* at 57.

3         Again, these facts do not appear in Plaintiffs' complaints and should not be considered to

4    decide these motions. Plaintiffs bring them up only to illustrate 1) that Defendants' attempt to

5    draft their own record at the pleading stage distorts the truth-seeking function of litigation and

6    should not be permitted, and 2) that if the Court determines that more detailed allegations are

7    required, amendment would not be futile.

8    **V.    Plaintiffs' Consumer Protection Act Claims Are Viable.**

9         Finally, Scientific Games and Playtika offer brief suggestions that Plaintiffs' claims

10   under the Consumer Protection Act, RCW 19.86, and their unjust enrichment claims should be

11   dismissed. Playtika argues only that Mr. Wilson's claims should be dismissed because its games

12   are not illegal gambling. As explained above, they are.

13        Scientific Games contends that Ms. Fife's claims should be dismissed because it is not

14   engaged in an "unfair or deceptive act or practice." (Sci. Games Mot. at 19-20.) That is wrong as

15   a matter of law. Running an unauthorized gambling operation violates a state statute, the

16   Washington Constitution, and is a *per se* unfair trade practice under the Consumer Protection

17   Act. *State v. Reader's Digest Ass'n, Inc.*, 501 P.2d 290, 298 (Wash. 1972). While *Hangman*

18   *Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535-36 (Wash. 1986)

19   modified the holding of *Reader's Digest*, it did not call into question the court's previous

20   conclusion that illegal gambling is a *per se* unfair trade practice.

                                **CONCLUSION**

22        The Court should not consider the numerous external documents that Defendants

23   improperly attached to their motions to dismiss, and it should strike those documents and all

24   references to those documents in Defendants' motions. Finally, Plaintiffs respectfully request

25   that the 12(b)(6) motions be denied in their entirety. If the Court is inclined to grant the motions,

26   Plaintiffs request that any such dismissal be without prejudice and with leave to amend.

27

Resp. to Mot. to Dismiss - 24
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992

Respectfully submitted,

**SHERYL FIFE and SEAN WILSON**,

Dated: August 27, 2018

By: /s/Janissa A. Strabuk
*One of their attorneys*

TOUSLEY BRAIN STEPHENS PLLC
Janissa A. Strabuk
jstrabuk@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600
Fax: 206.682.2992

Rafey S. Balabanian*
rbalabanian@edelson.com
Eve-Lynn J. Rapp*
erapp@edelson.com
Todd Logan*
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

*Admitted pro hac vice*

Resp. to Mot. to Dismiss - 25
Case No. 3:18-cv-05275-RBL
Case No. 3:18-cv-05277-RBL
Case No. 2:18-cv-00565-RBL

TOUSLEY BRAIN STEPHENS PLLC
1700 7th Ave. Ste 2200, Seattle, WA 98101
Tel. 206.682.5600 • Fax: 206.682.2992