The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

SEAN WILSON, individually and on behalf of all others similarly situated,

    *Plaintiff*,

  v.

PLAYTIKA LTD, an Israeli limited company, and CAESARS INTERACTIVE ENTERTAINMENT, LLC, a Delaware limited liability company,

    *Defendants*.

Case No. 18-cv-05277-RBL

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

NOTE ON MOTION CALENDAR:

August 6, 2020

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 1

    A.    Plaintiff's Allegations. .......................................................................... 1

    B.    Relevant Litigation History. ................................................................. 2

    C.    The ISGA's Efforts to Change Washington Gambling Law. .............. 4

    D.    The Parties Mediate and Reach a Settlement. ..................................... 5

THE TERMS OF THE SETTLEMENT AGREEMENT .......................................... 6

    A.    Settlement Class Definition ................................................................. 6

    B.    Monetary Benefits ............................................................................... 6

    C.    Prospective Relief ............................................................................... 7

    D.    Release ................................................................................................ 7

    E.    Class Notice ........................................................................................ 7

    F.    Incentive Award Requests .................................................................. 7

    G.    Attorneys' Fees and Expense Requests .............................................. 8

ARGUMENT .......................................................................................................... 8

    I.    The Proposed Class Should Be Certified. ........................................... 8

        A.    The Proposed Class Meets the Requirements of Rule 23. ............. 9

            1.    The Proposed Settlement Class is Sufficiently Numerous. .... 9

            2.    Settlement Class Members Share Common Questions of Law and Fact. ............................................................. 9

            3.    Plaintiff's Claims are Typical of Settlement Class Members' Claims. ............................................................ 10

            4.    Plaintiff and His Counsel Adequately Represent the Settlement Class. ............................................................. 11

        B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3).    13

            1.    Common Questions of Law and Fact Predominate. ............. 13

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-ii

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

2.    A Class Action is the Superior Method of Resolving
the Controversy. ............................................................................ 14

II.    The Proposed Settlement Merits Preliminary Approval. ........................................... 16

A.    The Proposed Settlement is the Product of Serious, Informed,
Non-Collusive Negotiations. ................................................................... 17

B.    A *Churchill* Analysis Supports Preliminary Approval. .................................. 18

1.    The Strength of Plaintiff's Case, Risk of Further Litigation,
and Risk of Maintaining Class Action Status. ....................................... 18

2.    The Amount Offered in Settlement. ...................................................... 20

3.    Extent of Discovery Completed and the Stage of the Proceedings. ....... 21

4.    The Experience and Views of Counsel. ................................................. 22

III.    The Court Should Approve the Proposed Notice Plan. ............................................. 22

CONCLUSION ................................................................................................................ 24

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5277-iii

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

# <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases:**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................. 8, 9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2014)................................................................. 13

*Gen. Tel. Co. of the SW v. Falcon*,
    457 U.S. 147 (1982)................................................................. 11

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)............................................................ 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................. 9, 11

**United States Circuit Court of Appeals Cases:**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) .................................................. 10

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) .................................................. 8

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ................................................ 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................ 16

*Churchill Vill., L.L.C. v. Gen. Elect.*,
    361 F.3d 566 (9th Cir. 2004) .................................................. 16, 18, 19, 21

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .................................................. 12

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ................................................ 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................ 9, 11, 13

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-iv

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................ 16, 17, 18

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ......................................................................... 9

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ......................................................................... 22

*Kater v. Churchill Downs*,
    886 F.3d 784 (9th Cir. 2018) ......................................................................... 1

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ....................................................................... 20

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ......................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................ 16, 19, 22

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................... 16

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..................................................................... 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................................... 17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................... 10, 15

**United States District Court Cases:**

*Ali v. Menzies Aviation, Inc.*,
    No. 2:16-cv-00262 RSL, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ........................ 9

*Bennett v. SimplexGrinnell LP*,
    No. 11-cv-01854-JST, 2015 WL 1849543 (N.D. Cal. Apr. 22, 2015) ............................ 20

*Bess v. Ocwen Loan Servicing LLC*,
    334 F.R.D. 432 (W.D. Wash. 2020) .............................................................. 14

*Betorina v. Randstad US, L.P.*,
    No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) .......................... 18

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-v

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*Geier v. m-Qube, Inc.,*
    No. 13-cv-354, 2016 WL 3458345 (W.D. Wash. June 24, 2016) ...................................... 8

*Gragg v. Orange CAB Co., Inc.,*
    No. 12-cv-0576RSL, 2017 WL 785170 (W.D. Wash. Mar. 1, 2017).............................. 17

*Helde v. Knight Transportation, Inc.,*
    No. 2:12-cv-00904 RSL (W.D. Wash. May 24, 2017) .................................................... 16

*Ikuseghan v. Multicare Health Sys.,*
    No. 3:14-cv-05539 BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ......... 19, 21, 22

*In re Wells Fargo & Co. S'holder Derivative Litig.,*
    No. 16-cv-05541-JST, 2020 WL 1786159 (N.D. Cal. Apr. 7, 2020) .............................. 20

*Jama v. GCA Services Group, Inc., et al.,*
    No. 16-cv-0331 RSL, 2017 WL 4758722 (W.D. Wash. Oct. 20, 2017) .................... 9, 13

*Kelley v. Microsoft Corp.,*
    251 F.R.D. 544 (W.D. Wash. 2008) ............................................................................. 15

*Reichert v. Keefe Commissary Network, LLC,*
    331 F.R.D. 541 (W.D. Wash. 2019) .................................................................. 13, 14, 15

*Relente v. Viator, Inc.,*
    No. 12-cv-05868-JD, 2015 WL 2089178 (N.D. Cal. May 4, 2015).............................. 15

*Rinky Dink Inc. v. Elec. Merch. Sys. Inc.,*
    No. 13-cv-1347 JCC, 2015 WL 11234156 (W.D. Wash. Dec. 11, 2015) ....................... 25

*Rinky Dink, Inc. v. World Bus. Lenders, LLC,*
    No. 14-cv-0268-JCC, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) ............... 16, 19, 21

*Scott v. United Servs. Auto. Ass'n,*
    No. 11-cv-1422-JCC, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) .......................... 17

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.,*
    No. 2:16-cv-1211 WBS AC, 2019 WL 358517 (E.D. Cal. Jan. 29, 2019)...................... 15

*Tavenner v. Talon Grp.,*
    No. 09-cv-1370 RSL, 2012 WL 1022814 (W.D. Wash. Mar. 26, 2012)......................... 10

*Taylor v. Universal Auto Grp. I, Inc.,*
    No. 13-cv-5245 KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) .................. 14, 15

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*Wilson v. Maxim Healthcare Servs., Inc.*,
    No. 14-cv-789 RSL, 2017 WL 2988289 (W.D. Wash. June 20, 2017) ........................... 17

**Miscellaneous Authority:**

Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS,
2017 REVIEW AND ANALYSIS, (2018) ........................................................................ 20

Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS,
2018 REVIEW AND ANALYSIS, (2019) ........................................................................ 20

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS
    § 11.25 (4th ed. 2002) ..................................................................................... 16

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS
    § 11:53 (4th ed. 2002) ..................................................................................... 24

MANUAL FOR COMPLEX LITIGATION (Fourth)
    § 21.633 (2004) ................................................................................................. 8

NEWBERG ON CLASS ACTIONS
    § 4:49 (5th ed.) ................................................................................................ 13

RCW § 4.24.070 .............................................................................................................. 2

RCW § 9.46.010 ............................................................................................................ 10

RCW § 19.86.010 ............................................................................................................ 2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**INTRODUCTION**

This is the second settlement in a long-running cluster of litigation alleging that social casino apps are illegal gambling. Since its filing in early 2018, the Parties have contested this case before this Court, the Ninth Circuit, and even the Washington Legislature. With Defendants' petition for leave to appeal denied, and after protracted arm's-length negotiations facilitated by the Honorable Layn R. Phillips (retired, and now of Phillips ADR) and his staff, Plaintiff Sean Wilson and Defendants Playtika LTD and Caesars Interactive Entertainment ("CIE") have reached a pioneering settlement that is an excellent result for the class.

The proposed Settlement provides a non-reversionary cash recovery of $38 million from which participating class members stand to recover substantial portions of their alleged damages, ranging from 10% (at the low end) to more than 50% (at the top end). Particularly in the midst of a pandemic-driven recession, these recoveries will be life-changing for many class members. Importantly, the settlement further requires Playtika to implement meaningful prospective relief, including by providing addiction-related resources within their social casino games and by creating and honoring a comprehensive self-exclusion policy. Because this settlement is fair, reasonable, and adequate, the Court should not hesitate to approve it.

Consequently, Plaintiff respectfully requests that the Court: (i) certify the proposed Settlement Class; (ii) grant preliminary approval of the settlement; (iii) appoint Sean Wilson, David Taylor, Cathy Burdick, and Jesse Thibert as Class Representatives; (iv) appoint Jay Edelson, Rafey S. Balabanian, Todd Logan, Alexander G. Tievsky, and Brandt Silver-Korn as Class Counsel; (v) approve the proposed notice plan; and (vi) schedule the final approval hearing.

**BACKGROUND**

A.    **Plaintiff's Allegations.**

In April 2018, on the heels of the Ninth Circuit's opinion in *Kater v. Churchill Downs*, 886 F.3d 784 (9th Cir. 2018), Plaintiff Sean Wilson filed this proposed class action lawsuit alleging that Defendants' social casino games, including "Slotomania," "House of Fun,"

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

"Caesars Slots," and "Vegas Downtown Slots" (altogether the "Applications"), constitute unlawful gambling under Washington's gambling laws. *See* Dkt. 1. The gist of the Complaint was that the "social casino" business model, which drives players to pay real money for virtual casino chips, is illegal under Washington law because all internet gambling is illegal in Washington. More specifically, Wilson alleged that the Applications entice users with an initial allotment of free coins to wager on an array of Vegas-style slots, *id.* ¶ 27, the outcomes of which are "based entirely on chance." *id.* ¶ 33. He alleged that these initial free chips are "quickly los[t]" in the course of gameplay, *id.* ¶ 27, and that—once exhausted—users purchase more chips with real money (in packages ranging from $2 to $50 each) if they wish to extend gameplay. *Id.* ¶¶ 27-29. Because these virtual chips "extend gameplay," *id.* ¶ 53, Wilson alleged that these virtual chips are "things of value" under Washington's gambling laws, and that under RCW § 4.24.070 (the "Recover of Money Lost at Gambling Act" or "RMLGA"), users are entitled to recoup their losses. *See id.* ¶¶ 49-59. Wilson further alleged that these actions also constituted violations of RCW § 19.86.010 (the "Washington Consumer Protection Act" or "CPA") and common law unjust enrichment. *See id.* ¶¶ 60-76.

### B. Relevant Litigation History.

In July 2018, Playtika moved to dismiss, arguing variously that the Court lacks personal jurisdiction over this case, that a forum selection clause required the Court to dismiss the case with prejudice, and that Plaintiff failed to state a claim upon which relief could be granted because virtual coins in Playtika's Applications are not "things of value." *See generally* Dkt. 40. To properly address Playtika's jurisdictional arguments, the Parties stipulated to and the Court granted Plaintiff leave to conduct jurisdictional discovery. *See* Dkts. 44, 45. With that discovery concluded, Plaintiff filed separate briefs: (1) opposing Playtika's *forum non conveniens* motion, *see* Dkt. 48; (2) opposing Playtika's 12(b)(6) motion, *see* Dkt. 52; and (3) opposing Playtika's personal jurisdiction motion, *see* Dkt. 57.

In November 2018, in a twenty-five page published opinion, the Court agreed with Plaintiff, finding that Playtika is in fact subject to the Court's personal jurisdiction, that

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    Playtika's forum selection clause arguments failed in part because the State of Washington has a

2    strong interest in "ensuring that its residents are protected against the dangers of" social casino

3    apps, and that Wilson adequately stated a claim because virtual chips in the Applications are a

4    "thing of value" and no relevant exceptions apply. *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028

5    (W.D. Wash. 2018) (Dkt. 68). Playtika answered shortly thereafter. *See* Dkt. 74.

6        By prior agreement of the Parties, CIE had reserved its pleadings motions pending the

7    Court's resolution of Playtika's pleadings motions. *See* Dkt. 37. And by additional agreement of

8    the Parties, Wilson and Playtika agreed to an elongated briefing schedule for CIE's pleadings

9    motions, intended to allow Wilson adequate time to conduct appropriate jurisdictional discovery.

10    *See* Dkt. 71. In line with those agreements, CIE filed its own motion challenging the Court's

11    jurisdiction and arguing that Wilson failed to state a claim shortly after the Court's denial of

12    Playtika's motions. *See* Dkt. 75. Over the coming months, the Parties engaged in substantial

13    jurisdictional discovery efforts, including CIE's production of thousands of pages of documents.

14    *See* Declaration of Todd Logan ("Logan Decl.") ¶ 3. CIE's motion is still pending.

15        In March 2019, Playtika filed a motion pursuant to 28 U.S.C. § 1292(b) asking the Court

16    to certify for interlocutory appeal its order denying Playtika's motion to dismiss. *See* Dkt. 79.

17    Over Plaintiff's opposition, *see* Dkt. 84, that motion was granted. *See* Dkt. 85. The Ninth Circuit

18    initially stayed Playtika's petition for permission to appeal, and in March 2020—after plaintiffs

19    in related cases prevailed before the Ninth Circuit in related appeals—the Ninth Circuit denied

20    Playtika's petition. *See* Dkt. 101.

21        Around the same time, Playtika filed a motion asking the Court to certify the key issues

22    in this case to the Washington Supreme Court. *See* Dkt. 99. Plaintiff opposed that motion,

23    arguing both that it was procedurally improper and that the issues raised in Playtika's pleadings

24    motion just aren't the kinds of issues federal district courts certify to state supreme courts. *See*

25    Dkt. 102. The Court agreed with Plaintiff, denying Playtika's certification motion in May 2020.

26    *See* Dkt. 113.

27        Also in May 2020, the Parties agreed to attempt to resolve this case through mediation.

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-3

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

### C.    The ISGA's Efforts to Change Washington Gambling Law.

Along with other social casino companies organized under the banner of the International Social Gaming Association ("ISGA"), Playtika—in its capacity as an executive member of the ISGA—participated in the hiring of several well-connected lobbyists to try to change Washington gambling law. *See* Logan Decl. ¶ 4. The ISGA even retained former WSGC Commissioner Chris Stearns and had him advocate at a legislative committee hearing on its behalf.[1] Starting in early 2019, ISGA lobbyists began providing legislators draft legislation that would amend Washington's gambling laws with the effect (and specific intent) of gutting these lawsuits. *See* Logan Decl. ¶ 5. Over time, these efforts gained steam, with Senators Mark Mullet and John Braun, as well as Representatives Zack Hudgins, Brandon Vick, Bill Jenkin and Brian Blake, collectively sponsoring four (4) bills threatening to kill this case and others like it by "clarifying" that players who lose money playing social casinos cannot recover under the RMLGA. H.B. 2720, 66th Leg., Reg. Sess. (Wash. 2020); S.B. 6568, 66th Leg., Reg. Sess. (Wash. 2020); H.B. 2041, 66th Leg., Reg Sess. (Wash. 2019); S.B. 5886, 66th Leg., Reg. Sess. (Wash. 2019).

In response, Plaintiff's counsel met with lawmakers at the State Capitol, offered written and in-person testimony before the House Civil Rights & Judiciary Committee, corresponded with Senator Mullet, spoke with local press about the ISGA's efforts, and coordinated the submission of more than 100 letters to Washington State Representatives from social casino players. *See* Logan Decl. ¶ 6. These efforts ultimately held the line. Each bill introduced over the past two years has stalled, and the ISGA is now resigned to taking its next stab at rewriting Washington's gambling laws during the 2021 legislative session.

---

[1]    *Hearing on H.B. 2720 before the H. Civil Rights & Judiciary Committee*, 66th Leg., Reg. Sess. (Wash. 2020) (statement of Chris Stearns), https://www.tvw.org/watch/?clientID=9375922947&eventID=2020011330&startStreamAt=4464. About the ISGA, https://cite.law/QDU6-TDLJ.

Pl's Unopposed Mot. For Preliminary Approval
CASE No. 18-CV-5277-4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

### D.    The Parties Mediate and Reach a Settlement.

2      With Defendants' petition for leave to appeal denied, settlement talks began in earnest in

3   May 2020. *See* Logan Decl. ¶ 7. The Parties agreed to schedule a mediation session on June 16,

4   2020, with Judge Phillips (ret.), and furthermore agreed to make best efforts to reach a resolution

5   prior to the formal mediation date. *See id.* From that point forward, over the next two weeks, the

6   Parties were in near-daily communication with each other and with the Phillips ADR team, as the

7   Parties sought to crystallize the disputed issues, produce focal information and data, and narrow

8   down potential frameworks for resolution. *See id.* ¶ 8. During this period, Defendants provided

9   Plaintiff with several sets of detailed transactional data, the Parties exchanged substantive

10  briefing on the core facts, legal issues, litigation risks, and potential settlement structures, and the

11  Parties supplemented that briefing with extensive written and telephonic correspondence,

12  mediated by the Phillips ADR team, clarifying each other's positions. *See id.*

13     On June 10, 2020, the Parties reached an agreement in principle as to an appropriate

14  settlement amount. *See id.* ¶ 9. Negotiations on remaining term sheet issues continued until a

15  final term sheet was executed on June 12, 2020. *See id.* ¶ 10. But the negotiations didn't end

16  there: for the next several weeks, the Parties worked out the details of a final and binding class

17  action settlement agreement, exchanged several rounds of a working settlement document and

18  supporting exhibits, met and conferred telephonically to flesh out the remaining disputed

19  provisions, and began the process of meeting and conferring with the Platform Providers to

20  design a robust notice and administration plan. *See id.* ¶ 11. On August 5, 2020, the Parties

21  completed execution of the Settlement Agreement now before the Court. *See id.* ¶¶ 12, 25

22  Exhibit 1 (Class Action Settlement Agreement).

23

24

25

26

27

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## THE TERMS OF THE SETTLEMENT AGREEMENT

For the Court's convenience, the key terms of the Agreement are summarized below.

**A.     Settlement Class Definition:** The Settlement Class is defined as follows: "all persons who played the Applications on or before preliminary approval of the settlement while located in the state of Washington."[2] *See* Agreement § 1.33.

**B.     Monetary Benefits:** Defendants have agreed to establish a $38,000,000.00 Settlement Fund from which Settlement Class Members who file a valid claim will be entitled to recover a cash payment, after deducting costs and administrative expenses, any fee award to proposed Class Counsel, and any incentive payments to the Class Representatives. *See id.* § 1.32. No portion of the Settlement Fund will revert to Defendants. *Id.* § 2.1(i). Any Settlement Class Member checks not cashed within 90 days of issuance will be either be placed in a second distribution fund or donated to a Court-approved *cy pres* recipient. *Id.* § 2.1(h)*.* As described in detail in the Plan of Allocation, the amount of each Settlement Class Member's payment will vary based on the Settlement Class Member's Lifetime Spending Amount (those with higher Lifetime Spending Amounts are eligible to recover a greater percentage back) and overall Settlement Class Member participation levels. *See id.* §§ 1.36, 2.1(c); Exhibit E to the Agreement. Based on its experience, Heffler Claims Group (the "Settlement Administrator") anticipates that participating Settlement Class Members in the highest category of Lifetime Spending Amounts will likely recover gross payments in excess of 50% of their Lifetime Spending Amounts, and that participating class members in the smallest category of Lifetime Spending Amounts will likely  recover gross payments in excess of 10% of their Lifetime Spending Amounts. *See* Declaration of Scott M. Fenwick ("Fenwick Decl.") ¶ 15. Settlement Class Members will be able to quickly and easily estimate the amount of their potential payment

---

[2]     Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members of their families, (2) the Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, and employees, (3) persons who properly execute and file a timely request for exclusion from the class, and (4) the legal representatives, successors or assigns of any such excluded persons. *See* Agreement § 1.33.

on the Settlement Website. *See* Agreement § 4.2(c).

**C.**    **Prospective Relief:** Playtika has agreed to establish a voluntary self-exclusion policy that will allow players to exclude themselves from further gameplay. *See id.* § 2.2. Playtika must also make a link to that policy prominently available within the games, and its customer service representatives will provide the link to players who contact them and reference or seek help for video game behavior disorders. *See id.* Playtika has also agreed to other prospective relief measures, including changes to game mechanics such that when players run out of virtual chips, they won't need to purchase additional chips or wait to receive free additional chips to keep playing Defendants' games. *See id.*

**D.**    **Release:** In exchange for the relief described above, Defendants and other entities, including the Platform Providers Facebook, Apple, Google, Amazon, Microsoft, and Samsung, will be released from all claims raised in these cases relating to the operation of Defendants' social casino games and the sale of virtual chips in those games, including claims that the games were illegal gambling or the chips were "things of value." The full release is contained at *id.* § 1.27.

**E.**    **Class Notice:** The Settlement Fund will be used to pay the costs of sending the notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. *Id.* § 1.35. Heffler Claims Group, the Settlement Administrator, will send class notices via email and/or U.S. Mail based on records produced by Defendants and obtained from third parties. *Id.* §§ 4.1, 4.2. Heffler will also establish a settlement website and implement a digital publication notice campaign targeting class members. *Id.* In line with Rule 23, the notice will include the nature of the action, a summary of the settlement terms, and instructions on how to object or opt out of the settlement, including relevant deadlines. *Id.* § 4.3.

**F.**    **Incentive Award Requests:** With no consideration having been given or received, Sean Wilson will seek no more than $5,000 as an incentive award, and each other Class

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-7

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    Representative will seek at most $1,000 as an incentive award. *See id.* § 8.3. Defendants

2    explicitly reserve their right to challenge any incentive award petition. *See id.*

3        **G.     Attorneys' Fees and Expenses Requests:** The Parties have agreed that proposed

4    Class Counsel is entitled to an award of reasonable attorneys' fees and expenses in an amount to

5    be determined by the Court and to be paid from the Settlement Fund. *See id.* § 8.1. Without the

6    Parties having discussed the issue of attorneys' fees at any point in their negotiations, and with

7    no consideration given or received, proposed Class Counsel have unilaterally agreed to limit any

8    petition for attorneys' fees to no more than 30 percent (30%) of the Settlement Fund, plus

9    reimbursement of expenses. *Id.* Any fee award requested by proposed Class Counsel will of

10   course be subject to the Court's approval. *Id.*

11                                          **ARGUMENT**

12   **I.     The Proposed Class Should Be Certified.**

13       Before granting preliminary approval, the Court must first determine that the proposed

14   class is appropriate for certification. To do so, the proposed class must meet the requirements of

15   Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521

16   U.S. 591, 614, 621 (1997); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.

17   2010); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.633 (2004).[3]

18       Rule 23(a) requires that a plaintiff demonstrates that (1) the proposed class is so

19   numerous that joinder of all individual class members is impracticable (numerosity), (2) there are

20   questions of law or fact common to the proposed class (commonality), (3) the claims of the

21   plaintiff are typical of those of the class (typicality), and (4) the plaintiff will adequately protect

22   the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). In addition, where, as here,

23   _____

24   [3]     Courts sometimes also inquire into whether the proposed class is "ascertainable," that is, "whether the
     Court can reasonably identify which individuals are class members and which are not." *Geier v. m-Qube, Inc.*, No.
     13-cv-354, 2016 WL 3458345, at *2 (W.D. Wash. June 24, 2016). But in this Circuit there is no separate
25   "administrative feasibility" or "ascertainability" requirement implicit in Rule 23. *Briseno v. ConAgra Foods, Inc.*,
     844 F.3d 1121, 1123 (9th Cir. 2017) ("[S]eparate administrative feasibility prerequisite to class certification is not
26   compatible with the language of Rule 23."). Nevertheless, membership in the proposed class here is based on
     objective, ascertainable criteria: whether a person has previously played an at-issue Application.

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  Plaintiff seeks certification under Rule 23(b)(3), Plaintiff must also demonstrate that common

2  questions predominate over any questions affecting only individual members (predominance),

3  and that a class action is superior to other available methods for fairly and efficiently

4  adjudicating the controversy (superiority). *See id.* at (b)(3). Because the proposed class is being

5  certified for settlement purposes, the Court "need not inquire whether the case, if tried, would

6  present intractable management problems." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d

7  539, 557 (9th Cir. 2019) (quoting *Amchem*, 521 U.S. at 620).

8        **A.**     **The Proposed Class Meets the Requirements of Rule 23.**

9            1.    The Proposed Settlement Class Is Sufficiently Numerous.

10        The first prerequisite to class certification under Rule 23(a)—numerosity—requires that

11  the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

12  There is no specific minimum number of proposed class members required to satisfy the

13  numerosity requirement, but generally a class of forty or more members is considered sufficient.

14  *Ali v. Menzies Aviation, Inc.*, No. 2:16-cv-00262 RSL, 2016 WL 4611542, at *1 (W.D. Wash.

15  Sept. 6, 2016); *see Jama v. GCA Services Group, Inc., et al.*, No. 16-cv-0331 RSL, 2017 WL

16  4758722, at *3 (W.D. Wash. Oct. 20, 2017) (numerosity satisfied by class of 93 class members).

17        Here, the Settlement Class exceeds one hundred thousand individuals. *See* Logan Decl. ¶

18  13. Consequently, the proposed class is so numerous that joinder of their claims is impracticable,

19  and the numerosity requirement is satisfied.

20            2.    Settlement Class Members Share Common Questions of Law and Fact.

21        The second requirement of Rule 23(a)—commonality—is satisfied where "there are

22  questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is

23  construed permissively, and is demonstrated when the claims of all class members "depend upon

24  a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc.*

25  *v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted); *see also Hanlon v. Chrysler Corp.*,

26  150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual

27  predicates is sufficient, as is a common core of salient facts coupled with disparate legal

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-9

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   remedies within the class."). The common contention must be of such a nature that it is capable

2   of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue

3   that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

4   Moreover, "[where] the circumstances of each particular class member vary but retain a common

5   core of factual legal issues with the rest of the class, commonality exists," *Parra v. Bashas', Inc.*,

6   536 F.3d 975, 978–79 (9th Cir. 2008), and "[i]t is not necessary that members of the proposed

7   class share every fact in common," *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015,1030

8   (9th Cir. 2012) (internal quotations omitted). Indeed, "the theoretical possibility of individual

9   issues is not enough to outweigh the benefits of common resolution of classwide issues."

10   *Tavenner v. Talon Grp.*, No. 09-cv-1370 RSL, 2012 WL 1022814, at *4 (W.D. Wash. Mar. 26,

11   2012).

12       This case presents common questions in spades. For example: are the virtual chips in

13   Defendants' Applications "things of value"? If so, are the Applications "gambling games" under

14   Washington law? If so, are class members entitled to recover their losses under the RMLGA?

15   Does the legislative declaration of purpose in RCW § 9.46.010 render Defendants' alleged

16   violations of gambling laws also unfair practices under the Washington CPA? If so, are proposed

17   class members entitled to pursue an injunction? How about treble damages?

18       These common questions—whose answers depend solely on Defendants' common course

19   of conduct—establish commonality. *Abdullah v. U.S. Sec. Assocs., Inc*., 731 F.3d 952, 957 (9th

20   Cir. 2013) (noting key inquiry is "whether class treatment will generate common answers apt to

21   drive the resolution of the litigation") (internal quotations omitted). At the heart of this case is

22   Plaintiff's allegation that the Applications are illegal gambling. This litigation, if tried to a

23   verdict, would resolve all claims stemming from that allegation in a single stroke. Rule 23(a)'s

24   commonality requirement is therefore satisfied.

25              3.    Plaintiff's Claims are Typical of Settlement Class Members' Claims.

26       Rule 23(a)'s next requirement—typicality—requires that the class representatives' claims

27   be typical of those of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). The

purpose of this requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Id.*; *see also Ali*, 2016 WL 4611542, at *2 (W.D. Wash. Sept. 6, 2016). This is a "permissive" standard and it is met where the representative claims "are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. At bottom, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Ali*, 2016 WL 4611542, at *2 (quoting *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 156 (1982)) (internal quotations omitted).

Typicality is met here. While the Class Representatives each have different total alleged damages, each possesses legal claims identical to those possessed by all members of the proposed class: that the Applications are illegal gambling games, and consequently that their in-game losses must be returned to them. In other words, each suffered the same injury as every other class member harmed by their use of the allegedly illegal Applications. Accordingly, each has the same interest as every other class member in obtaining all available relief for these alleged violations. The typicality requirement is satisfied.

4.     Plaintiff and His Counsel Adequately Represent the Settlement Class.

Rule 23(a)'s final requirement—adequacy—requires that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that interest of the class remain adequately protected. *See Dukes*, 564 U.S. at 349 n.5 (discussing

how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims that are typical of those of the class).

Here, Plaintiff and the other proposed class representatives meet the requirements to be appointed Class Representatives. First, as discussed above, they share the same interest in securing relief for the claims at issue as every other member of the proposed Settlement Class, and there is no evidence of any conflict of interest. Plaintiff, for his part, has long demonstrated his willingness to vigorously prosecute this case, including by providing his counsel with relevant documents and testimony, by having his deposition taken in a related matter, and more broadly by helping raise public awareness about the social casino industry. *See* Logan Decl. ¶ 14. Plaintiff and the other Class Representatives will fairly and adequately protect the Settlement Class's interest.

Similarly, the appropriateness of appointing Plaintiff's counsel from Edelson PC as Class Counsel is readily apparent. The Court must only ask whether proposed Class Counsel are unencumbered by conflicts of interest and will vigorously prosecute the action. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). The answer to both questions is clearly yes.

First, the record discloses no conflicts of interest and counsel are aware of none. *See* Logan Decl. ¶ 15. Proposed Class Counsel have no financial stake in any of the Defendants, nor do they have any connections to class members that might cause them to privilege certain class members over others. *See id*. Second, proposed Class Counsel's commitment to vigorously prosecuting this case and protecting the interests of the proposed class cannot credibly be challenged. The underlying legal theory of this and other social casino cases was developed by Edelson PC and first raised in related cases more than five years ago—again, by Edelson PC. *See id.* ¶ 16. No other law firm in the country has ever pursued similar claims. *See id.* Over the years, Edelson PC has represented the interests of the proposed class not just in the specific bounds of this case docket, but also in proceedings before the WSGC and before the Washington Legislature. *See id.* ¶ 17. More broadly, proposed Class Counsel are well-qualified and experienced members of the plaintiffs' bar who have extensive experience in class actions of

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   similar size, scope, and complexity to this case. *See id.* ¶ 18; Exhibit 2 (Edelson PC Firm

2   Resume). Proposed Class Counsel have frequently been appointed lead class counsel by courts

3   throughout the country and have the resources necessary to conduct litigation of this nature. *See*

4   *id.* In other words, Plaintiff's counsel's adequacy is beyond cavil.

5       Consequently, Rule 23(a)'s adequacy requirement is met. *See Jama*, 2017 WL 4758722,

6   at *6 (finding adequacy requirement met when "both the named plaintiffs and plaintiffs' counsel

7   have demonstrated a commitment to vigorously prosecuting [the] action on behalf of the class").

8       **B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3).**

9       In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed

10  class must also satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority.

11  *See* Fed. R. Civ. P. 23(b)(3). Certification is encouraged where, as here, "the actual interests of

12  the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at

13  1022. As detailed below, both the predominance and superiority requirements of Rule 23(b)(3)

14  are satisfied.

15      1.   Common Questions of Law and Fact Predominate.

16      Common questions predominate here. The Supreme Court has made clear that

17  predominance is a qualitative inquiry: "[t]he predominance inquiry 'asks whether the common,

18  aggregation-enabling, issues in the case are more prevalent or important than the non-common,

19  aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

20  1045 (2016) (quoting 2 NEWBERG ON CLASS ACTIONS § 4:49 (5th ed.)). When considering

21  whether common issues predominate, the court should begin with "the elements of the

22  underlying cause of action." *Reichert v. Keefe Commissary Network, LLC*, 331 F.R.D. 541, 553

23  (W.D. Wash. 2019) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809

24  (2014)). "More important questions apt to drive the resolution of the litigation are given more

25  weight in the predominance analysis over individualized questions which are of considerably less

26  significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th

27

Cir. 2016). As these cases, and the text of the rule make clear, individual questions need not be absent, but merely must occupy less importance to the litigation than common questions.

The inquiry is especially straightforward in this case. The showings needed for Plaintiff to prevail on the elements of his claims under the RMLGA and the CPA depend on evidence or legal argument that is common to the class—principally the operation of Defendants' Applications. A factfinder's resolution of questions related to the operation of the Applications—for example, whether the chips sold in the Applications are "things of value"—will resolve questions central to the claims of every class member in one fell swoop, driving the litigation forward. *See Reichert*, 331 F.R.D. at 554-55 (finding predominance satisfied when all or nearly all elements of the class's prima facie case presented common questions); *Taylor v. Universal Auto Grp. I, Inc.*, No. 13-cv-5245 KLS, 2014 WL 6654270, at *16 (W.D. Wash. Nov. 24, 2014) (predominance satisfied where "predominant" issue contested by the parties was common to the class). An assessment of each class member's Lifetime Spending Amount will be accomplished by a common and straightforward method: summing their spending—evidenced by the data—to be provided to the court-appointed Settlement Administrator by Defendants and the Platform Providers. *Cf. Bess v. Ocwen Loan Servicing LLC*, 334 F.R.D. 432, 436 (W.D. Wash. 2020) (quotation omitted) ("[T]he need for individualized findings as to the amount of damages does not defeat class certification."). These common questions overwhelm any individualized questions affecting particular class members, either as it relates to the Class's ability to make a prima facie showing of Defendants' liability, or with respect to potential affirmative defenses. And, in any event, the Supreme Court has made clear that the existence of "affirmative defenses peculiar to some individual class members" does not defeat predominance, even if those defenses must be tried separately. *Tyson Foods*, 136 S. Ct. at 1045. Predominance is therefore satisfied.

2.   A Class Action Is the Superior Method of Resolving the Controversy.

The superiority criterion encompasses at least four considerations: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-14

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

class members; (C) the desirability or undesirability of concentrating the litigation of the claims

in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P.

23(b)(3). The first and second factors plainly point in favor of certification. "There is no

indication that any [class members] have an interest in pursuing their own claims—in fact, it

would likely be uneconomical for them to do so. There is also no evidence that certain [class

members] have already initiated their own individual actions." *Reichert*, 331 F.R.D. at 556.

While some class members have substantial alleged damages, it is difficult to imagine that a

rational contingency-fee lawyer would take on *any* individual claim given the time, effort, and

resources that Defendants have demonstrated they are willing to commit to defending claims

against their Applications. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis

would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of

class certification."). Moreover, the huge number of individuals in the class would overwhelm

the judicial system if class members were forced to litigate individually. *See Taylor*, 2014 WL

6654270, at *19.

Next, this forum is the clear choice in which to concentrate the litigation. The claims

arise under Washington law given that the Class is composed of individuals who played the

Applications while in Washington. *See Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*,

No. 2:16-cv-1211 WBS AC, 2019 WL 358517, at *6 (E.D. Cal. Jan. 29, 2019) ("The fact that all

remaining claims are brought under California law weighs in favor of a California federal court

adjudicating the dispute."). Moreover, the Court is intimately familiar with the facts and law

underlying this action. It would make little sense to force the Parties to start over elsewhere. *See

Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 560 (W.D. Wash. 2008) (finding the forum superior

because "the Court is already familiar with [p]laintiffs' claims").

Accordingly, a class action is the superior method for adjudicating the controversy

between the Parties, and as all requirements of class certification under Rule 23 are met, the

proposed Settlement Class should be certified.

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-15

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**II.    The Proposed Settlement Merits Preliminary Approval.**

After determining that the proposed class should be certified, the Court must determine whether the settlement warrants approval. Fed. R. Civ. P. 23(e). This is a two-step process: "(1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing." *Relente v. Viator, Inc.*, No. 12-cv-05868 JD, 2015 WL 2089178, at *2 (N.D. Cal. May 4, 2015).

At the preliminary approval stage, the court determines merely whether the "proposed settlement [is] within the range of final approval" such that notice should be disseminated to the class. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14-cv-0268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016); *see also* Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.25 at 3839 (4th ed. 2002). While the Ninth Circuit has a "strong judicial policy" favoring settlement of class actions, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), before the Court preliminarily approves a class action settlement, it "has a responsibility to review a proposed class action settlement to determine whether the settlement is 'fundamentally fair, adequate, and reasonable,'" *Wilson v. Maxim Healthcare Servs., Inc.*, No. 14-cv-789 RSL, 2017 WL 2988289, at *1 (W.D. Wash. June 20, 2017) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)); Fed. R. Civ. P. 23(e).

Where, as here, a settlement agreement is negotiated prior to adversarial class certification, courts generally look to two guideposts in deciding whether to preliminarily approve the settlement: (1) whether there are any signs of collusion between class counsel and the defendant, and (2) whether the so-called *Churchill* factors suggest the settlement is fair. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elect.*, 361 F.3d 566, 575 (9th Cir. 2004)). At the preliminary approval stage, this Court can conduct a "less searching" inquiry than at final approval, and "seek[] merely to identify any 'glaring deficiencies' prior to sending notice to class members." *Rinky Dink*, 2016 WL 4052588, at *4.

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-16

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**A.    The Proposed Settlement is the Product of Serious, Informed, Non-Collusive Negotiations.**

This is not a collusive settlement. It is the product of adversarial litigation and informed by arm's-length negotiations facilitated by a nationally-renowned mediator. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Helde v. Knight Transportation, Inc.*, No. 2:12-cv-00904 RSL, Dkt. 191 at 2 (W.D. Wash. May 24, 2017) (granting preliminary approval where "Settlement Agreement resulted from extensive arm's-length negotiations, with participation of an experienced mediator"); *Gragg v. Orange CAB Co., Inc.*, No. 12-cv-0576 RSL, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (same).

Furthermore, this settlement presents none of the red flags the Ninth Circuit has flagged as indicative of potential collusion—(1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947 (quotations omitted).

*First*, proposed Class Counsel is not receiving a disproportionate distribution of the Settlement Fund or being amply rewarded while the class receives no monetary distribution. To the contrary, proposed Class Counsel have unilaterally limited themselves to a fee petition within the "usual range" for fees in this Circuit—30% of the Settlement Fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). And far from receiving coupons or meaningless cy pres only relief, class members will receive substantial individual cash recoveries.[4] *Second*, there is no "clear sailing" provision in the settlement. *See In re Bluetooth*, 654 F.3d at 947 (defining clear sailing provisions). Defendants are free to object to proposed Class Counsel's fee request

---

[4]    Aside from the Class Representatives' right to petition the Court for reasonable incentive awards, no class member will be given preferential treatment at the expense of another. *See Scott v. United Servs. Auto. Ass'n*, No. 11-cv-1422-JCC, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval generally granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class") (citations omitted).

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-17

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    should Defendants determine the request is unreasonable. *See* Agreement § 8.1. *Third*, there is no

2    possibility that any funds revert back to Defendants. *See id.* § 1.35.

3        Ultimately, there are no signs of collusion here because there was no collusion here. This

4    settlement is the product of serious, informed, non-collusive negotiations—and that fact militates

5    in favor of preliminary approval.

6    **B.    A *Churchill* Analysis Supports Preliminarily Approval.**

7        In addition to looking for possible signs of collusion, courts assessing a proposed class

8    action settlement weigh the *Churchill* factors. Those are:

9        (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
     duration of further litigation; (3) the risk of maintaining class action status
10       throughout the trial; (4) the amount offered in settlement; (5) the extent of
     discovery completed and the stage of the proceedings; (6) the experience and
11       views of counsel; (7) the presence of a governmental participant; and (8) the
     reaction of the class members of the proposed settlement.
12

13   *In re Bluetooth*, 654 F.3d at 946 (quoting *Churchill*, 361 F.3d at 575). Here, there is no

14   governmental participant and the reaction of class members cannot be known until after the class

15   has been notified of the settlement, so the last two factors are not applicable. The other six

16   *Churchill* factors weigh in favor of preliminary approval.

17       1.    The Strength of Plaintiff's Case, Risk of Further Litigation, and Risk of
             Maintaining Class Action Status.
18

19       The first three *Churchill* factors—the strength of Plaintiff's case, the risk of further

20   litigation, and the risk of maintaining class action status—are all tied together, and the relevant

21   analysis supports preliminary approval. *See Betorina v. Randstad US, L.P.*, No. 15-cv-03646-

22   EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017) (analyzing the first three *Churchill*

23   factors together). The key point here is that while Plaintiff is confident in the strength of his

24   claims and believes he would prevail at class certification and trial, litigating this case to verdict

25   would thrust upon class members substantial risks that are simply unacceptable in light of the

26   immediate and certain cash recovery this settlement makes available.

27       The most significant of these risks, in Plaintiff's counsel's professional judgment, is that

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-18

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    the ISGA's lobbying efforts in Olympia may eventually lead to a retroactive change in the law.

2    *See* Logan Decl. ¶ 19. Plaintiff's counsel have thus far fended off the ISGA's lobbying efforts,

3    but the ISGA and its members—many of them billion-dollar gambling outfits—are formidable

4    opponents. If these cases do not settle now, each legislative cycle the class will be at risk of

5    having their claims eviscerated in the name of "remov[ing] . . . economic uncertainty" by

6    "clarifying" that proposed class members cannot recover under the RMLGA. H.B. 2720, 66th

7    Leg., Reg. Sess. (Wash. 2020). And in addition to lobbying-related risks, it is also of course

8    possible—as with any litigation—that Defendants could prevail on any number of future

9    motions, including motions related to class certification and summary judgment.

10            Even assuming Plaintiff's counsel fends off the ISGA and Defendants' motions long

11   enough for Plaintiff to try this case to verdict, Defendants' inevitable appeals would take years,

12   further delaying the relief to the class. *See* Logan Decl. ¶ 20; *Rodriguez*, 563 F.3d at 966

13   ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for

14   years. This factor, too, favors the settlement."); *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-

15   05539 BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and

16   any appeals are inherently uncertain and involve significant delay. The [s]ettlement avoids these

17   challenges."). The substantial expense and burden associated with litigating this case not only

18   through trials but also through inevitable appeals further militate in favor of granting preliminary

19   approval now. *See* Logan Decl. ¶ 20; *Rinky Dink*, 2016 WL 4052588, at *5 (finding preliminary

20   approval appropriate when considering the expense of the "additional depositions, expert work,

21   and motion work [that] would have to be completed before trial").

22            In sum, the strength of Plaintiff's case balanced against the risks and expenses of

23   continued litigation weighs strongly in favor preliminary approval. *Id.* (finding first three

24   *Churchill* factors supported preliminary approval when plaintiffs were confident in their case but

25   continuing to litigate risked losing class certification and was "inherently expensive");

26   *Ikuseghan*, 2016 WL 3976569, at *4 ("Absent the proposed [s]ettlement, [c]lass [m]embers

27   would likely not obtain relief, if any, for a period of years.").

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-19

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

2.    The Amount Offered in Settlement.

The next *Churchill* factor, the relief offered in settlement, also clearly favors approval. Thirty-eight million dollars ($38,000,000) is, no matter how sliced or diced, a massive recovery for this Washington-only class. It is a significant enough sum that class members with the largest Lifetime Spending Amounts stand to likely recover more than 50% of their Lifetime Spending Amounts, and that no participating class member is likely to recover less than 10% of their Lifetime Spending Amount. *See* Fenwick Decl. ¶ 15; *cf. Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"). Particularly in the midst of a pandemic-driven recession, these recoveries will be life-changing for many class members. *See* Logan Decl. ¶ 21.

In the closest comparable cases of this magnitude, these are "excellent" results. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-05541-JST, 2020 WL 1786159, at *8 (N.D. Cal. Apr. 7, 2020). The average settlement in securities class actions alleging nine figure damages, for example, recovers somewhere between 2% and 3% of the alleged damages. *See id.*; Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS, 2017 REVIEW AND ANALYSIS, at 8 (2018); *see also* Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS, 2018 REVIEW AND ANALYSIS, at 6 (2019) (noting average 2 percent recovery for 2018).

The prospective relief offered by the settlement buttresses the fairness of the settlement. *See Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) (noting "the significant value of the prospective relief also obtained in the settlement agreement" warranted preliminary approval). The settlement requires Playtika to establish and make publicly available a voluntary self-exclusion policy that will allow players to exclude themselves from further gameplay, to link to that policy prominently within the games, and to have its customer service representatives provide that link to players who contact them and reference or seek help for video game behavior disorders. *See* Agreement § 2.2. These changes, intended to generally mirror the sorts of voluntary self-exclusion programs that states

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-20

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

often require casinos to implement, reflect a pioneering—and, in Plaintiff's counsel's view, long-overdue—advancement in social casino self-regulation. And as relevant here, these changes to Playtika's conduct—in conjunction with the $38 million cash fund—militate in favor of approval. *See Officers for Justice*, 688 F.2d at 628 ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.).

Further, Playtika has implemented and committed to maintain changes to in-game mechanics that prevent players from being forced to purchase additional virtual coins or wait before continuing to play at least one slot game within the Application they are playing.

For these reasons, the relief secured by this settlement warrants the Court's approval.

### 3. Extent of Discovery Completed and the Stage of the Proceedings.

Next, the extent of discovery completed and the stage of the proceedings demonstrate that the Parties "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink*, 2016 WL 4052588, at *5. The Parties only agreed to mediate after more than two years of contentious litigation, including the production and review of more than ten thousand (10,000) pages of documents, briefing before this Court, and a petition for interlocutory review to the Ninth Circuit. *See* Logan Decl. ¶ 22. Consequently, the Parties negotiated the settlement with a crystal-clear understanding of the strengths and weaknesses of the Parties' claims and defenses. *See id.* ¶ 9.

Moreover, in the weeks before the scheduled mediation date, Defendants provided Plaintiff with several sets of detailed transactional data for virtual chip purchases; the parties exchanged briefs on the core facts, legal issues, litigation risks, and potential settlement structures; and the Parties supplemented that briefing with extensive written and telephonic correspondence, mediated and shuttled by the Phillips ADR team, clarifying each other's positions in advance of the mediation. *See id.* ¶ 8. At the end of these exchanges, and with the skilled assistance of Judge Phillips and his Phillips ADR team, the Parties were able to hash out a settlement in principle. *See id.* ¶ 9. By then, the Parties were fully informed on all pertinent issues and capable of assessing the benefits of the settlement now before the Court. *See id.*;

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*Ikuseghan*, 2016 WL 3976569, at *3 (approving settlement reached "between experienced attorneys who are familiar . . . with the legal and factual issues of this case in particular"). This factor, too, thus supports preliminary approval.

4.    The Experience and Views of Counsel.

The final *Churchill* factor that can be considered here—the views and experience of counsel—likewise demonstrates the proposed settlement warrants preliminary approval. As discussed in Section I(A)(4), *supra*, proposed Class Counsel has extensive experience litigating complex class actions and negotiated this settlement with the best interests of the class in mind. After years of adversarial litigation and substantial mediation efforts with the assistance of Judge Phillips and his staff, proposed Class Counsel is confident that the proposed settlement is fair, reasonable, and adequate, and in the best interests of the class. *See* Logan Decl. ¶ 23; *Rodriguez*, 563 F.3d at 967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Ikuseghan*, 2016 WL 3976569, at *4 (considering that class counsel, "who are experienced and skilled in class action litigation, support the [s]ettlement as fair, reasonable, and adequate, and in the best interests of the [c]lass as a whole," and approving settlement).

**III.    The Court Should Approve the Proposed Notice Plan.**

Upon certification, Due Process and Rule 23 require the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties have agreed upon a multi-part notice plan to be carried out by Heffler Claims Group, a well-respected class action settlement administrator. *See, e.g.*, *Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. 13-cv-1347 JCC, 2015 WL 11234156, at *8 (W.D. Wash. Dec. 11, 2015) (appointed Heffler Claims Group). Defendants have agreed to provide the Settlement Administrator and proposed Class Counsel all Settlement Class Member contact information reasonably available to Defendants, including names, phone numbers, email addresses, and

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-22

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

mailing addresses. *See* Agreement § 4.1(a). For each UserID with a Lifetime Spending Amount greater than zero, Defendants must also provide the UserID's Lifetime Spending Amount, if known. *Id.* Proposed Class Counsel and Defendants' Counsel have agreed to cooperate, and are in the process of cooperating, to work with the Platform Providers to obtain and furnish to the Settlement Administrator the Lifetime Spending Amounts of and all contact information in the Platform Providers' possession—including names, platform-generated usernames, platform-generated PlayerIds, phone numbers, email addresses, and mailing addresses—for all persons in the Settlement Class with a Lifetime Spending Amount greater than zero. *Id.* § 4.1(c)-(d).

All of this information will be used by the Settlement Administrator to create the Class List. *Id.* § 4.1(f). Within 35 days of the entry of preliminary approval, the Settlement Administrator will use the Class List to send notice via email substantially in the form attached to the Agreement as Exhibit B, along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is available in the Class List. *See id.* § 4.2(a). In the event transmission of the email notice results in any "bounce-backs," the Settlement Administrator will, where reasonable, correct any issues that may have caused the "bounce-back" to occur and make a second attempt to re-send the email notice, and will, where possible, send Notice substantially in the form attached to the Agreement as Exhibit C via First Class U.S. Mail. *See id.* The Settlement Administrator will also, where possible, send notice substantially in the form attached as Exhibit C via First Class U.S. Mail to all Settlement Class Members with a Lifetime Spending Amount greater than $100.00. *See id.* Class Counsel anticipates that more than 225,000 UserIDs associated with class members will receive direct notice. *See* Logan Decl. ¶ 24.

Within seven days of the entry of preliminary approval, the Settlement Administrator will also establish a Settlement Website at www.playtikasettlement.com, which will include the ability to file Claim Forms online. *See* Agreement § 4.2(c). The Notice provided on the Settlement Website will be substantially in the form of Exhibit D to the Agreement, and the website will advise the Settlement Class of the total value of the Settlement Fund and provide

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-23

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

Settlement Class Members the ability to approximate their Settlement Payment. *Id.*

Finally, the Settlement Administrator will supplement the direct notice program with a digital publication notice program that is estimated to deliver more than ten million (10,000,000) impressions, reaching more than 80% of likely Settlement Class Members, and serving members of the target audience with more than four different digital impressions each. *Id.* § 4.2(d). Declaration of Jeanne C. Finegan ("Finegan Decl.") ¶ 3, 33. The digital publication notice campaign will run for at least one month and will contain active hyperlinks to the Settlement Website. *See* Agreement § 4.2(d).

In addition to reaching the Settlement Class, notice is adequate when it provides the information necessary to make a decision in language that can be readily understood by the average class member. Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11:53 (4th ed. 2002). That is the case here, where the format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. *See* Exhibits B–D to the Agreement.

Because the proposed methods for providing notice to the Class comport with both Rule 23 and Due Process, the notice plan should be approved by the Court.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) certify the proposed class for settlement purposes, (2) appoint Sean Wilson, David Taylor, Cathy Burdick, and Jesse Thibert as Class Representatives, (3) appoint Jay Edelson, Rafey S. Balabanian, Todd Logan, Alexander G. Tievsky, and Brandt Silver-Korn of Edelson PC as Class Counsel, (4) grant preliminary approval of the proposed settlement, (5) approve the proposed notice plan, and (6) schedule a final approval hearing.

DATED this 6th day of August, 2020.

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-24

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**SEAN WILSON,** individually and on behalf of all others similarly situated,


By: /s/ Todd Logan

Rafey S. Balabanian*
rbalabanian@edelson.com
Todd Logan*
tlogan@edelson.com
Brandt Silver-Korn*
bsilverkorn@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300/Fax: 415.373.9435

Jay Edelson*
jedelson@edelson.com
Alexander G. Tievsky*
atievsky@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370/ Fax: 312.589.6378


By: /s/ Cecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
Cecily C. Shiel, WSBA #50061
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600

*Plaintiff's Attorneys and proposed Class Counsel*

*Admitted pro hac vice*

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5277-25

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992